1  Rudy A. Englund, WSBA No. 04123
   David C. Spellman, WSBA No. 15884
2  Jane E. Brown, WSBA No. 48763
   LANE POWELL PC
3  1420 Fifth Avenue, Suite 4200
   P.O. Box 91302
4  Seattle, WA 98111-9402
   Telephone: 206.223.7000
5  Facsimile: 206.223.7107

6  Attorneys for Defendant Wells Fargo
   Bank, N.A.

7              UNITED STATES DISTRICT COURT
           EASTERN DISTRICT OF WASHINGTON
8                      AT SPOKANE

9  VALERIE RHODES, a single        )
   woman, and on behalf of others  )   No.
10 similarly situated,             )
                                   )   Washington State Court, Stevens
11                      Plaintiff, )   County, Cause No. 16-2-00529-1
                                   )
   vs.                             )
12                                 )   **DEFENDANT'S NOTICE OF**
   WELLS FARGO BANK,               )   **REMOVAL TO FEDERAL**
13 NATIONAL ASSOCIATION, a         )   **COURT**
   National Banking Association,   )
14                                 )   (Diversity Jurisdiction – Class
                        Defendant. )   Action Fairness Act)
15 _____ )

16 TO:   The Honorable Judges of the United States District Court for the Eastern

17       District of Washington at Spokane:

18          PLEASE TAKE NOTICE that Defendant Wells Fargo Bank, N.A. ("Wells

19 Fargo") hereby removes the above-captioned action, Case No. 16-2-00529-1,

20 currently pending in the Superior Court of the State of Washington for Stevens

21 County, to the United States District Court for the Eastern District of Washington

22 at Spokane.   Removal is based on 28 U.S.C. §§ 1332(d) (the Class Action

NOTICE OF REMOVAL TO FEDERAL COURT - 1

105727.1810/6882823.4

Fairness Act), and 1441(b). The following statement is submitted in accordance with 28 U.S.C. § 1446:

# I. <u>STATEMENT OF JURISDICTION</u>

1.      On February 18, 2005, the Class Action Fairness Act ("CAFA") was enacted. CAFA grants federal district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant, and where the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

2.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(d) and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a). This case is a civil class action where: (1) the proposed class contains more than 100 class members, (2) the total amount in controversy for all class members exceeds $5,000,000, and (3) there is diversity between at least one class member and one defendant.

3.      As set forth below, this case meets all of CAFA's requirements for removal and is timely and properly removed by Wells Fargo with the filing of this Notice.

# II. <u>STATUTORY REQUIREMENTS</u>

4.      <u>Commencement of Action</u>: On December 12, 2016, Valerie Rhodes ("Plaintiff") commenced this civil class action against Wells Fargo in the Superior Court of the State of Washington for Stevens County, captioned as *Valerie Rhodes, a single woman, and on behalf of others similarly situated v.*

NOTICE OF REMOVAL TO FEDERAL COURT - 2

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

105727.1810/6882823.4

*Wells Fargo Bank, N.A.*, Case No. 16-2-00529-1.  Plaintiff's Complaint for Class Action and Damages ("Complaint") is attached as "Exhibit 1."  (*See* current Docket List for Case No. 16-2-00529-1, attached to the Declaration of Rudy A. Englund in Support of Defendant's Notice of Removal to Federal Court ("Englund Decl.") as Exhibit A.)

5. <u>Service of Complaint</u>:  On December 16, 2016, Wells Fargo was served with the Summons and Complaint. (Englund Decl. ¶ 2; *see also* Ex. B.)

6. <u>Answer</u>:  Plaintiff's Complaint is "indeterminate" with respect to the amount in controversy, and therefore, the case stated by the initial pleading was not removable.  (*See infra* ¶¶ 10-13.)  Accordingly, Wells Fargo appeared on January 9, 2017, and timely filed its Answer and Affirmative Defenses to Plaintiff's Complaint on February 16, 2017.  (Englund Decl., Exs. C and F.)

7. <u>Diversity of Citizenship</u>:  Under CAFA, diversity is established pursuant to 28 U.S.C. § 1332(d)(2)(A) if any plaintiff, named or not, is a "citizen of a State different from any defendant."  Plaintiff alleges she owned real property located at [4591] Sherman Road, Deer Park, Stevens County, Washington ("Rhodes Property").[1]  (*See* Ex. 1 ¶ 5.2.)  Plaintiff alleges that "Wells Fargo was the beneficiary of a deed of trust secured by the Rhodes Property." (*Id.* ¶ 5.3.)  Plaintiff further alleges that Wells Fargo damaged the Rhodes Property when entering, winterizing and rekeying it, and also damaged

[1] Plaintiff transposed the numbers of the street address of the Rhodes Property in the Complaint.  The correct street number is 4951.

NOTICE OF REMOVAL TO FEDERAL COURT - 3

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

105727.1810/6882823.4

1  and converted personal property located in the Rhodes Property.  (*Id.* ¶¶ 5.9-
2  5.12.)  Plaintiff also alleges that putative class members are citizens of
3  Washington State.  (*Id.* ¶6.1.)  Wells Fargo is, and was at the time of the filing of
4  this action, a National Banking Association with its main office in South Dakota.
5  (Englund Decl. ¶ 15, and Ex. I.)  Therefore, at least one plaintiff is a citizen of a
6  state (Washington) different from Wells Fargo (South Dakota), and thus
7  satisfying the diversity requirements of 28 U.S.C. § 1332(d)(2)(A).

8      8.    Covered Class Action:  This action meets CAFA's definition of a
9  class action, which is "any civil action filed under Rule 23 of the Federal Rules of
10  Civil Procedure or similar State statute or rule of judicial procedure."  28 U.S.C.
11  §§ 1332(d)(1)(B), 1453(a) & (b).  Plaintiff filed this action under Washington
12  Civil Rule 23(a) and (b)(3)—Washington's equivalent of Fed. R. Civ. P. 23.  (*See*
13  Ex. 1 § III.)

14      9.    Class Action Consisting of More than 100 Members:  Plaintiff allege
15  that "it is estimated that the number of persons similarly situated to the
16  Representative Plaintiff number in the hundreds to thousands or more; therefore
17  joinder of each individual proposed Class member is impractical."  (*See* Ex. 1
18  ¶ 6.5.)  Based on Plaintiff's allegations, the number of class members exceeds
19  CAFA's requirement of at least 100 persons.  28 U.S.C. § 1332(d)(5)(B).

20      10.   Amount in Controversy:  Under CAFA, the claims of the individual
21  class members are aggregated to determine if the amount in controversy exceeds
22  the required "sum or value of $5,000,000, exclusive of interest and costs."  28

NOTICE OF REMOVAL TO FEDERAL COURT - 4

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

105727.1810/6882823.4

1  U.S.C. §§ 1332(d)(2), (d)(6).  While Wells Fargo denies the claims alleged in the

2  Complaint and further denies that Plaintiff, or any putative class member, are

3  entitled to any monetary relief, the amount in controversy here satisfies the

4  jurisdictional threshold as explained below.

5      11.    On its face, the Complaint is indeterminate with respect to the

6  amount in controversy.  As a result, on January 31, 2017, Wells Fargo served its

7  First Set of Interrogatories and Requests for Production to Plaintiff, seeking

8  further information regarding the nature and scope of the damages claimed by

9  Plaintiff and the putative class.  (Englund Decl. ¶ 11, and Ex. G.)

10     12.    On February 13, 2017, Plaintiff's counsel, Clay M. Gatens, emailed

11 a letter to counsel for Defendant, Rudy A. Englund, that confirmed that Plaintiff

12 and the putative class are seeking damages in excess of the jurisdictional amount

13 of $5,000,000, exclusive of interest and costs.  (Englund Decl., Ex. H.)

14     13.    Pursuant to 28 U.S.C. §§ 1446(b)(3) and 1453(b), this Notice of

15 Removal is filed within thirty (30) days of obtaining confirmation from Plaintiff's

16 counsel that the amount in controversy exceeds $5,000,000.    28 U.S.C.

17 §§ 1446(b)(3) ("if the case stated by the initial pleading is not removable, a notice

18 of removal may be filed within thirty days after receipt by the defendant . . . of a

19 copy of an amended pleading, motion, order or other paper from which it may

20 first be ascertained that the case is one which is or has become removable"); *see*

21 *also Roth v. CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir.

22 2013) (holding that where the Complaint is "indeterminate" with respect to

NOTICE OF REMOVAL TO FEDERAL COURT - 5

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

105727.1810/6882823.4

1   diversity of citizenship or amount in controversy, the defendant may remove

2   outside of the two 30-day periods under 28 U.S.C. § 1446(b)(1), (3)). This Notice

3   of Removal is filed on March 13, 2017, within thirty days of confirming the

4   amount in controversy requisite is satisfied. (*See* Englund Decl. ¶ 14.)

5       14.   This Court has jurisdiction over this action pursuant to Section 4 of

6   CAFA (28 U.S.C. § 1332(d)), which grants district courts original jurisdiction

7   over putative class actions with more than 100 class members where the

8   aggregate amount in controversy exceeds $5 million, and any member of the class

9   of Plaintiff is a citizen of a state different from any defendant. As set forth above,

10   this action satisfies each of the requirements of Section 1332(d)(2) for original

11   jurisdiction under CAFA.

12               **III.  NO CAFA EXCEPTIONS APPLY**

13       15.   CAFA contains a number of exceptions to its grant of original

14   jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)-(5). However, none of these

15   exceptions are applicable here.

16       16.   The first is a discretionary exception based on the number of putative

17   class members found in the state where the action was filed. *See* 28 U.S.C. §

18   1332(d)(3). However, the exception only applies where the "primary defendants

19   are citizens of the State in which the action was originally filed." Here, the action

20   was originally filed in Washington and, as established above, Defendant is not a

21   Washington citizen—it is a citizen of South Dakota. Thus, this exception does

22   not apply.

NOTICE OF REMOVAL TO FEDERAL COURT - 6

**LANE POWELL** PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

105727.1810/6882823.4

17.    Similarly, 28 U.S.C. § 1332(d)(4) contains two further exceptions to CAFA's grant of jurisdiction, based on the number of putative class members in the state in which the action was filed. However, this exception, too, only applies where all primary defendants, or at least one defendant, is a "citizen of the State in which the action was originally filed." *See* 28 U.S.C. §§ 1332(d)(4)(A)(i)(II) and 1332(d)(4)(B). Because this action was originally filed in Washington, and Defendant is a South Dakota citizen, these exceptions also do not apply.

18.    Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions for Defendants who are government entities, or putative classes which number less than 100 in the aggregate. *See* 28 U.S.C. §§ 1332(d)(5)(A)-(B). Because Defendant is not a governmental entity, and the proposed class numbers in the thousands, these exceptions also do not apply.

## **OTHER REQUIREMENTS**

19.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2).

20.    Wells Fargo respectfully requests that this action now pending against it in the Superior Court of the State of Washington for Stevens County be removed to this Court.

21.    By seeking removal, Wells Fargo does not waive, and expressly reserves, all rights, defenses, or objections of any nature that it may have to Plaintiff's claims.

NOTICE OF REMOVAL TO FEDERAL COURT - 7

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

105727.1810/6882823.4

1    22.    A copy of Plaintiff's Complaint, Exhibit 1, is being concurrently

2    filed as a separate attachment in the electronic filing system and labeled as

3    "Complaint."

4    23.    A copy of this Notice of Removal is being concurrently filed with

5    the clerk of the Superior Court of the State of Washington for Stevens County,

6    and concurrently served upon Plaintiff's counsel pursuant to 28 U.S.C. § 1446(d).

7    24.    Wells Fargo is the only identified Defendant in this action, and has

8    consented to this Notice of Removal. See 28 U.S.C. §§ 1441, 1446.

9    25.    This Notice of Removal is signed pursuant to Fed. R. Civ. P. 11. See

10    28 U.S.C. § 1446(a).

11    26.    Intradistrict Assignment.    This case should be assigned to the

12    Spokane Division, because a substantial part of the events giving rise to

13    Plaintiff's claims arose there.

14    WHEREFORE, Wells Fargo prays that the above-referenced action now

15    pending against it in the Superior Court of the State of Washington for Stevens

16    County be removed to the United States District Court for the Eastern District of

17    Washington at Spokane.

18    DATED this 13th day of March, 2017.

19    LANE POWELL PC

20

21    By    s/Rudy A. Englund
       Rudy A. Englund, WSBA No. 04123
       englundr@lanepowell.com

22

NOTICE OF REMOVAL TO FEDERAL COURT - 8

**LANE POWELL PC**
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

105727.1810/6882823.4

1

2

By   *s/David C. Spellman*
David C. Spellman, WSBA No. 15884
spellmand@lanepowell.com

3

4

By   *s/Jane E. Brown*
Jane E. Brown, WSBA No. 48763
brownje@lanepowell.com

5

6

1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111
Telephone: 206.223.7000
Facsimile: 206.223.7107

7

8

9

Attorneys for Defendant Wells Fargo
Bank, N.A.

10

11

12

13

14

15

16

17

18

19

20

21

22

NOTICE OF REMOVAL TO FEDERAL COURT - 9

105727.1810/6882823.4

1

## CERTIFICATE OF SERVICE

2          Pursuant to RCW 9.A.72.085, the undersigned certifies under penalty of

3    perjury under the laws of the State of Washington, that on March 13, 2017, the

4    document attached hereto was presented to the Clerk of the Court for filing and

5    uploading to the CM/ECF system.   In accordance with their ECF registration

6    agreement and the Court's rules, the Clerk of the Court will send e-mail

7    notification of such filing to the following persons:

8    ***Plaintiff's Attorneys***                    ☑    by **CM/ECF**
     Clay M. Gatens                          ☑    by **Electronic Mail**
9    Sally F. White                          ☐    by **Facsimile Transmission**
     Jeffers, Danielson, Sonn & Aylward      ☐    by **First Class Mail**
10   2600 Chester Kimm Road                   ☐    by **Hand Delivery**
     Wenatchee, WA 98801                      ☐    by **Overnight Delivery**
11   Phone: (509) 662-3685
     Fax: (509) 662-2452
12   Email: clayg@jdsalaw.com
     Email:  sallyw@jdsalaw.com

13

14          Executed on the 13th day of March, 2017, at Seattle, Washington.

15                                    *s/Rudy A. Englund*
                                      Signature of Attorney
16                                    WSBA No. 04123
                                      Typed Name:  Rudy A. Englund
17                                    Address:  1420 Fifth Avenue, Suite 4200
                                      P.O. Box 91302
18                                    Seattle, WA  98111-9402
                                      Telephone:  206.223.7000
19                                    Fax:  206.223.7107
                                      E-mail:  englundr@lanepowell.com
20                                    Attorneys for Defendant Wells Fargo
                                      Bank, N.A.

21

22

NOTICE OF REMOVAL TO FEDERAL COURT- 10

LANE POWELL PC
1420 FIFTH AVENUE, SUITE 4200
P.O. BOX 91302
SEATTLE, WA 98111-9402
206.223.7000 FAX: 206.223.7107

105727.1810/6882823.4

JS 44 (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| Valerie Rhodes, a single woman, and on behalf of others similarly situated | Wells Fargo Bank, National Association, a National Banking Association, |

**(b)** County of Residence of First Listed Plaintiff    Stevens
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Clay M. Gatens & Sally F. White at Jeffers, Danielson, Sonn & Aylward, 2600 Chester Kimm Road, Wenatchee, WA 98801
509-662-3685

Attorneys *(If Known)*
Rudy A. Englund, David C. Spellman & Jane E. Brown at Lane Powell PC, 1420 Fifth Avenue, Ste. 4200, Seattle, WA 98101
206-223-7000

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1   U.S. Government Plaintiff
☐ 3   Federal Question *(U.S. Government Not a Party)*
☐ 2   U.S. Government Defendant
☒ 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY**    **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane    ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability    Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel &    ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | Slander    Pharmaceutical Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers'    Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability    ☐ 368 Asbestos Personal | | ☐ 840 Trademark | ☐ 460 Deportation |
| | ☐ 340 Marine    Injury Product | | | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability    Liability | | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle    **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle    ☐ 370 Other Fraud | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | Product Liability    ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | ☐ 360 Other Personal    ☒ 380 Other Personal | ☐ 751 Family and Medical | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| | Injury    Property Damage | Leave Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury -    ☐ 385 Property Damage | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| | Medical Malpractice    Product Liability | ☐ 791 Employee Retirement Income Security Act | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS**    **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights    **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 220 Foreclosure | ☐ 441 Voting    ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment    ☐ 510 Motions to Vacate Sentence | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations    ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment    ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other    **Other:** ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education    ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | |
| |    ☐ 555 Prison Condition | | | |
| |    ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 USC §§ 1332(d), 1441, 1446, 1453 and Class Action Fairness Act of 2005

Brief description of cause:
Trespass, conversion & violation of WA Consume Protection Act related to alleged property preseration activities

## VII. REQUESTED IN COMPLAINT:

☒ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $   Indeterminate

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
03/10/2017

SIGNATURE OF ATTORNEY OF RECORD
s/Rudy A. Englund

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

1    IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

2    COUNTY OF STEVENS

3    VALERIE RHODES, a single woman, and    )    NO.
     on behalf of others similarly situated    )
4                                            )    COMPLAINT FOR CLASS ACTION
              Plaintiff,                     )    AND DAMAGES
5                                            )
          vs.                                )
6                                            )
     WELLS FARGO BANK, NATIONAL              )
7    ASSOCIATION, a National Banking         )
     Association,                            )
8                                            )
              Defendant.                     )
9    _____)

10        Plaintiff, VALERIE RHODES, a single woman, and on behalf of others similarly

11   situated, through her attorneys of record, Jeffers, Danielson, Sonn & Aylward, P.S., by

12   Clay M. Gatens and Sally F. White, brings this Complaint for Class Action and Damages

13   against WELLS FARGO BANK, NATIONAL ASSOCIATION ("Wells Fargo" or

14   "Defendant"), and alleges as follows:

15                    **I.    NATURE OF THE CASE**

16        1.1    Wells Fargo, one of the largest lending institutions in America, contracts

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 1
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

Exhibit 1

011

1  with and employs agents throughout Washington to provide property inspection and

2  preservation services for homes located in Washington that are in default under the terms

3  of their loan agreement, but which homes have not been foreclosed upon.

4      1.2    Wells Fargo derives its purported authority to enter such homes via a form

5  deed of trust provision that is present in all of its contracts with borrowers.

6      1.3    That provision states, if the borrower abandons or vacates the residence,

7  then the lender (Wells Fargo) may do whatever is reasonable and appropriate to protect

8  the lender's interest in and secure the residence, including by entering the residence to

9  change the locks (the "Entry Provision").

10     1.4    Thus, upon a borrower's default, but prior to the conclusion of any

11 foreclosure proceedings, Wells Fargo or its agents act to determine the occupancy status

12 of properties, secure properties deemed vacant or abandoned, remove personal property

13 therefrom, and provide other so-called "property preservation services."

14     1.5    Such services include but are not limited to:  forcibly entering the property

15 to change locks, replace or board up doors and windows, drain water from pipes,

16 eliminate building or other code violations or dangerous conditions, and turn on or off

17 utilities.

18     1.6    During such entry, borrowers' real and personal property is often damaged

19 or converted by Wells Fargo or its agents.

20     1.7    On July 7, 2016, in *Jordan v. Nationstar Mortgage, LLC*, No. 92081-8, the

21 Washington State Supreme Court deemed the same form deed of trust provisions relied

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 2
1508782

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

upon by Wells Fargo unenforceable as contrary to Washington State law. Exhibit D. *Jordan* erodes any purported legal justification for Wells Fargo or its agents' presence on borrowers' properties for the performance of such preservation activities.

1.8     However, setting aside the unenforceability of the form deed of trust provisions, the provisions as written do not permit Wells Fargo or its agents' to damage, destroy, or convert borrowers' property, and/or deny the full use and enjoyment of borrowers' real and/or personal property prior to the completion of foreclosure.

1.9     Nevertheless, Wells Fargo has a common course of conduct whereby it wrongfully and forcibly enters borrowers' properties prior to completion of a foreclosure to perform destructive and disruptive acts, including destroying the borrower's existing lock(s), removing the destroyed lock(s) from the home, damaging property inside the home, and removing personal property from the home.

1.10    Thus, not only do Wells Fargo and/or its agents have no legal right to be present on borrowers' properties in advance of the completion of foreclosure proceedings, but Wells Fargo and/or its agents regularly act beyond the scope of the unenforceable and illegal form deed of trust provisions they rely upon.

1.11    As detailed herein, Wells Fargo's common acts and practices constitute common law trespass, intentional trespass, conversion of property, and violate Washington's Consumer Protection Act ("CPA") (RCW 19.86, *et seq.*), all in violation of Washington State law.

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 3
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

013

## II.    PARTIES

2.1    <u>Representative Plaintiff Valerie Rhodes.</u>    VALERIE RHODES ("Ms. Rhodes"), a single woman, at all times material hereto owned a single family home located at 4591 Sherman Road, Deer Park, Washington 99006 (the "Rhodes Property").

2.2    Ms. Rhodes has agreed to act as Class representative in this matter as "Plaintiff Rhodes" or "Representative Plaintiff Rhodes."

2.3    <u>Defendant.</u>  Defendant is, and at all times relevant hereto was, a federally-chartered National Banking Association that is organized and exists under the National Banking Act, with its principal place of business located in Sioux Falls, South Dakota.

2.4    Wells Fargo provides personal, small business, and commercial banking services.  It offers personal accounts and services, such as checking accounts, savings accounts and CDs, debit and prepaid cards, and credit cards; foreign exchange, online banking, online bill pay, transfer, mobile banking, and global remittance services; identity theft protection plans; mortgage loans, home equity lines and loans, personal lines and loans, student loans, and auto loans; auto, specialty vehicle, life, homeowners', renters', and umbrella liability insurance solutions; and wealth management and investing solutions.

2.5    Wells Fargo regularly transacts business throughout the state of Washington and Stevens County, Washington.

2.6    Defendant Wells Fargo is a wholly-owned subsidiary of Wells Fargo & Company (NYSE: WFC), which boasts online that it is "one of the nation's largest

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 4
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

1    financial institutions." *See* https://www.wellsfargodealerservices.com/. Wells Fargo &

2    Company has $1.9 trillion in assets and provides banking, insurance, investments,

3    mortgage, and consumer and commercial financial services through more than 8,600

4    locations, 13,000 ATMs, online (wellsfargo.com), and mobile devices. *See*

5    https://www08.wellsfargomedia.com/assets/pdf/about/corporate/wells-fargo-today.pdf.

6    Wells Fargo & Company reports that, at the end of second quarter 2016, it ranked third in

7    assets among U.S. banks and was the world's most valuable bank by market

8    capitalization. *Id.* Wells Fargo & Company states that it does business with 70 million

9    customers and one in three U.S. households, and has approximately 268,000 team

10   members in 36 countries and territories across its more than 90 businesses. *Id.*

11        2.7    Wells Fargo & Company reports that it is an industry leader and "#1" as a

12   "Home loan originator to minority and low- to moderate-income homebuyers, and in

13   low- to moderate-income neighborhoods," based on 2015 HMDA data. *Id.* It further

14   advertises itself as "#1" as a "Home loan servicer," based on 1Q16 *Inside Mortgage*

15   *Finance. Id.* It further boasts it was ranked "#1" as "U.S. Bank Lender of the Year

16   (2014-2015)" by Real Estate Capital Awards, and "#1" as "Asset-based Lender of the

17   Year (2015)" by *Real Deals. Id.* And it lists itself as "#1" as an "Affordable housing

18   lender (2015)" by MBA Commercial/Multifamily Origination Rankings. *Id.*

19        2.8    Defendant Wells Fargo owns a variety of divisions, including Wells Fargo

20   Home Mortgage and Wells Fargo Dealer Services (self-proclaimed "one of the nation's

21   leading auto lenders" *see*

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 5
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

1   https://www.wellsfargodealerservices.com/AboutWFDS/CorporateProfile/default.asp).

2   ## III.    JURISDICTION AND VENUE

3   3.1    This is an action for damages.  Jurisdiction and venue are appropriate in

4   this Court pursuant to RCW 4.12.010 and RCW 4.12.020.

5   ## IV.    BACKGROUND REGARDING WELLS FARGO'S COMMON POLICIES AND PRACTICES

6   ### *Wells Fargo's Unfair and Deceptive Business Practices*

7   4.1    Wells Fargo's entry upon a residential property usually begins once a

8   homeowner becomes delinquent or defaults on his or her mortgage.

9   4.2    Upon a Washington borrower's delinquency or default, pursuant to its

10  form deed of trust provision in its contracts with all borrowers, Wells Fargo will instruct

11  an agent to inspect the home to determine its occupancy status.

12  4.3    Wells Fargo does not instruct its agents on making determinations or

13  distinctions between "vacant" homes versus "abandoned" homes, and does not provide its

14  agents with clear standards for determining the occupancy status of the home.

15  4.4    Once the home is deemed "vacant" or "abandoned," Wells Fargo will

16  instruct its agent to forcibly enter the home and perform services, such as securing the

17  home by boarding up the doorway or windows, turning off utilities to the home, and

18  placing lockboxes or padlocks on the doors to the home.

19  4.5    Such common instructions also include that the agent should forcibly enter

20  the home to perform destructive acts, including destroying and removing existing lock(s)

21  on a home, damaging doors or smashing windows if necessary for entry, and removing

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 6
1566702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

1    personal property found in the home.

2    4.6    These common actions result in damage to the borrower's real and

3    personal property, interference with the borrower's full use and enjoyment of the home,

4    conversion of personal property located within the home.

5    4.7    Despite extensive use of such agents, Wells Fargo does not adequately

6    train or supervise its agents, who frequently use personnel who have not been screened,

7    had a criminal background check, nor had a qualifications review performed.

8    4.8    Frequently, Wells Fargo or its agents inaccurately determine the

9    occupancy status of a home.

10    4.9    If a home is deemed vacant or abandoned, Wells Fargo orders its agent to

11    gain access the home by forcibly entering the home through locked doors or windows.

12    This includes by picking and breaking locks, and smashing in doors and windows.

13    4.10    Upon entry, Wells Fargo instructs its agents to remove all personal

14    property and belongings from the home, an act commonly known as "trashing out" the

15    property.

16    4.11    After a borrower's home has been trashed out, Wells Fargo does not

17    require its agents to store, preserve, or otherwise track the items that were trashed out of

18    the home.    Wells Fargo and/or its agents have no policy or procedure for returning

19    "trashed out" personal property to borrowers.

20    4.12    Wells Fargo instructs its agents to place their own locks and lock boxes on

21    the borrower's home and post a notice upon the borrower's home instructing the

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 7
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

017

borrower to contact Wells Fargo for access to the home.

4.13    When Wells Fargo learns that a homeowner wants access to his or her home, Wells Fargo does not:  (a) immediately provide access to the homeowner; (b) remove the locks that it had placed on the home; (c) restore the homeowner's locks to the home; or (d) return the locks to the homeowner.

4.14    When Wells Fargo learns that a homeowner wants personal property that was removed from the home returned, Wells Fargo does not return the personal property.

4.15    When Wells Fargo learns that a homeowner wants the damage to the home repaired, Wells Fargo does not repair the damage.

4.16    On information and believe, Wells Fargo's unfair and deceptive acts and practices described above are widespread, occurring throughout Washington State.

### *The Washington Supreme Court's Decision Invalidating the Deed of Trust Provisions in Jordan v. Nationstar Mortgage, LLC, No. 92081-8*

4.17    In 2012, a lawsuit entitled *Jordan v. Nationstar Mortgage, LLC*, was filed in Washington State Superior Court in Chelan County under Cause No. 12-2-00385-2. This lawsuit challenged the legality and enforceability of the form deed of trust entry provisions relied upon by mortgage lenders and servicers to enter borrowers' homes and "secure" their properties upon default, abandonment, or vacancy. *See* Exhibit A.

4.18    Following the grant of class certification in 2014, counsel for Nationstar removed the Complaint to the United States District Court for the Eastern District of Washington, where it was assigned to the Hon. Thomas O. Rice under Cause No. 2:14-cv-00175-TOR.

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 8
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

1    4.19    In 2015, the parties filed cross-motions for partial summary judgment, and

2   on August 10, 2015, Judge Rice issued an Order Certifying Questions to Washington

3   Supreme Court on the following bases:

4    Put succinctly, this Court has been asked to decide whether
     so-called Entry Provisions within the deeds of trust of
5    Plaintiff and other class members are enforceable under
     Washington law absent post-default consent of the
6    borrower or permission from a court. Nationstar contends
     the Provisions—akin to a limited license or similar non-
7    possessory interest in land—merely grant the lender the
     ability to enter, maintain, and secure the encumbered
8    property and that such conduct does not constitute
     possession in violation of Washington's lien theory of
9    mortgages. Ms. Jordan, on the other hand, contends the
     Entry Provisions unlawfully deprive a borrower of her
10   exclusive right to possession prior to foreclosure and that
     the borrower cannot agree by contract to relinquish such
11   right prior to default. Instead, Ms. Jordan asserts that the
     lender either must obtain post-default consent of the
12   borrower or a court-appointed receiver pursuant to RCW
     chapter 7.60.

13
     Because of the complexity of the state law issues presented
14   in the parties' cross-motions for partial summary judgment
     and their significant policy implications, this Court finds
15   that the Washington Supreme Court, which has not had
     occasion to settle these issues, "is better qualified to answer
16   the certified questions in the first instance." . . . Further,
     this Court finds the Washington Supreme Court's answers
17   are "necessary . . . in order to dispose of [this] proceeding."

18   Exhibit B at pp. 3-4 (internal citations omitted).

19    4.20    Judge Rice then certified, *inter alia*, the following question of law to the

20   Washington Supreme Court:

21    (1) Under Washington's lien theory of mortgages and
     RCW 7.28.230(1), can a borrower and lender enter into

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 9
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

1             a contractual agreement prior to default that allows the lender to enter, maintain, and secure the encumbered

2             property prior to foreclosure?

3  *Id.* at p. 10.

4       4.21    On August 18, 2015, the Washington Supreme Court sent a letter

5  accepting Judge Rice's Order Certifying Questions under Supreme Court No. 92081-8,

6  and set a briefing schedule for the parties. Exhibit C.

7       4.22    The parties timely submitted their briefs, and oral argument took place

8  before the Washington Supreme Court on January 19, 2016.

9       4.23    On July 7, 2016, the Washington Supreme Court issued its *En Banc*

10  Opinion in *Jordan v. Nationstar Mortgage, LLC*, No. 92081-8, answering "the first

11  certified question in the negative." Exhibit D at p. 6. The Court explained, "Our case

12  law is clear that Washington law prohibits a lender from taking possession of property

13  before foreclosure of the borrower's home." *Id.* at p. 8. The Court concluded that the

14  deed of trust entry provisions allow the lender to take possession of the borrower's home

15  in advance of the conclusion of a foreclosure of the borrower's home:

16             From any approach, we find that Nationstar's conduct constituted possession. . . . Nationstar's vendor's actions

17             constituted possession because its actions are representative of control. The vendor drilled out Jordan's existing locks

18             and replaced the lock with its own. . . . [A]lthough [Jordan] was able to obtain a key by calling, the process made

19             Nationstar the "middle man." She could no longer access her home without going through Nationstar. . . . Nationstar

20             effectively ousted Jordan by changing her locks, exercising control over the property. . . . Changing the locks is akin to

21             exercising control, which is the key element of possession. By changing the locks, Nationstar took possession of the

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 10
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

property. Since these actions are authorized by the entry provisions, the entry provisions allow the lender to take possession of the property. Because Washington law prohibits lenders from taking possession of the borrower's property before foreclosure, the provisions are in conflict with state law. Therefore, we must answer the first certified question in the negative and find that the entry provisions are unenforceable.

*Id.* at pp. 12-14.

4.24    The Court concluded: "[T]he entry provisions are in direct conflict with state law and are unenforceable." *Id.* at p. 20.

4.25    Based on *Jordan*, Wells Fargo has no legal right to engage in its common practice of forcible entry into pre-foreclosure homes, damage to borrowers' real and person property, conversion of borrowers' personal property and belongings located within the home, and interference with borrowers' full use and enjoyment of their properties prior to the completion of a foreclosure.

## V.    REPRESENTATIVE PLAINTIFF RHODES

5.1    Representative Plaintiff Rhodes is just one example of Wells Fargo's common pattern and practice of unlawfully entering upon borrowers' properties in advance of any foreclosure proceedings, damaging borrowers' real property, converting borrowers' personal property, and denying borrowers' the full use and enjoyment of their property prior to completion of a foreclosure.

5.2    Representative Plaintiff Rhodes, at all times material hereto, owned a single family home located at 4591 Sherman Road, Deer Park, Washington 99006 (the "Rhodes Property").

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 11
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

5.3    At all times relevant hereto, Wells Fargo was the beneficiary of a deed of trust secured by the Rhodes Property and recorded under Steven's County Auditor Number 2008 0001426 (the "Deed of Trust"), on February 13, 2008.

5.4    The Deed of Trust contains a provision which states that, if Ms. Rhodes abandoned the Rhodes Property, the lender (Wells Fargo) may do whatever is reasonable and appropriate to protect the lender's interest in the Rhodes Property and secure the Rhodes Property, including entering the Rhodes Property to change the locks (the "Entry Provision").

5.5    Ms. Rhodes lawfully owned the Rhodes Property when it was entered upon by Wells Fargo or its agents.

5.6    At the time of the entry, the loan securing the Rhodes Property was in default, but no foreclosure proceedings had been initiated.

5.7    At the time of the entry, the form deed of trust provision purporting to authorize Wells Fargo's presence on the Rhodes Property in the event of default was unenforceable as contrary to Washington State law, pursuant to *Jordan v. Nationstar Mortgage*.

5.8    At the time of the entry, the Rhodes Property was neither vacant nor abandoned.

5.9    To gain entry to the Rhodes Property, Wells Fargo or its agent damaged the Rhodes Property, including damaging locks and a doors.

COMPLAINT FOR CLASS ACTION AND DAMAGES
Page 12
.1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

5.10   While on the Rhodes Property, Wells Fargo or its agent changed the locks upon the Rhodes Property, boarded up a door, and removed personal property from the Rhodes Property, including two door locks and other items.

5.11   Before leaving, Wells Fargo or its agent left a notice on the Rhodes Property directing the owner to contact Wells Fargo or its agent for access to the Rhodes Property and additional information.

5.12   Upon returning to the Rhodes Property, Ms. Rhodes discovered the Rhodes Property had been entered upon and the locks had been changed.  Ms. Rhodes was able to access the interior of the house through one door whose lock had not been adequately changed.  Once inside, Ms. Rhodes discovered the home had been winterized, damaged, and items of personal property were missing.

5.13   At no time did Wells Fargo or its agent remove its locks or lock box from the Rhodes Property, return or replace the original locks upon the Rhodes Property, return or replace the missing items of personal property, or repair or reimburse Ms. Rhodes for the damaged caused to the Rhodes Property.

5.14   The exact value of the personal property converted from the Rhodes Property is unknown at this time, but is believed to exceed $1,000.00.

5.15   The exact value of the damage to the Rhodes Property is unknown at this time, but multiple doors, locks, and other items suffered damage.

5.16   The exact value of the precluded rents arising from the denial of the full use and enjoyment of the Estate's real and/or personal property is unknown at this time.

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 13
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

023

1    5.17    On information and belief, the actions and inactions alleged above are part

2  of Wells Fargo's common business acts and practices.

3    VI.    **PROPRIETY OF CLASS ACTION PROSECUTION**

4    *Proposed Class Definition*

5    6.1    The members of the proposed Class include all Citizens of Washington

6  State:

7    (a) who own or owned real property in Washington State subject to a loan

8    that was in default;

9    (b) which property, within the applicable statute of limitations, was

10    entered upon by Wells Fargo and/or its agents prior to the completion

11    of any judicial or non-judicial foreclosure; and

12    (c) which entry upon the property by Wells Fargo and/or its agents was the

13    proximate cause of damage to the homeowner by:

14    (i)    damaging the homeowner's real or personal property;

15    and/or

16    (ii)    converting the homeowner's personal property or

17    belongings; and/or

18    (iii)    interfering with the homeowner's full use and enjoyment of

19    the home.

20    *CR 23(a)(1): Numerosity*

21    6.2    The exact number of persons and/or entities similarly situated to the

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 14
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

1    Representative Plaintiff is currently unknown.

2         6.3    However, on information and belief, Wells Fargo's unlawful acts and

3    practices are widespread throughout Washington State.

4         6.4    Moreover, Defendant Wells Fargo is a wholly-owned subsidiary of Wells

5    Fargo & Company (NYSE: WFC), which boasts online that it is "one of the nation's

6    largest financial institutions" (https://www.wellsfargodealerservices.com/), with $1.9

7    trillion in assets (https://www08.wellsfargomedia.com/assets/pdf/about/corporate/wells-

8    fargo-today.pdf), and claims to do business with 70 million customers and one in three

9    U.S. households. *Id.* Wells Fargo & Company reports that it is an industry leader and

10   "#1" as a "Home loan originator to minority and low- to moderate-income homebuyers,

11   and in low- to moderate-income neighborhoods," based on 2015 HMDA data. *Id.* It

12   further advertises itself as "#1" as a "Home loan servicer," based on 1Q16 *Inside*

13   *Mortgage Finance. Id.* It further boasts it was ranked "#1" as "U.S. Bank Lender of the

14   Year (2014-2015)" by Real Estate Capital Awards, and "#1" as "Asset-based Lender of

15   the Year (2015)" by *Real Deals. Id.* And it lists itself as "#1" as an "Affordable housing

16   lender (2015)" by MBA Commercial/Multifamily Origination Rankings. *Id.*

17        6.5    For these reasons, it is estimated that the number of persons similarly

18   situated to the Representative Plaintiff number in the hundreds to thousands or more;

19   therefore, joinder of each individual proposed Class member is impracticable.

20        6.6    In addition, the exact number of persons similarly situated to the

21   Representative Plaintiff may be identified from Wells Fargo's records of borrowers in

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 15
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

1    default and residences serviced in Washington State during the applicable statute of

2    limitations, and such persons may be identified with particularity through appropriate

3    judicial discovery procedures, such that it would be possible to give such persons actual

4    notice of these proceedings, if required.

5                    *CR 23(a)(2): Commonality*

6        6.7    There are questions of law and fact common among the claims of the

7    proposed Class Members, including but not limited to:

8                (a)  the common actions Wells Fargo takes on proposed class members'

9                    properties prior to completion of "foreclosure";

10               (b)  Wells Fargo's common policies or practices vis-à-vis actions it takes

11                   upon proposed class members' properties;

12               (c)  Wells Fargo's common policies or practices for securing agents to

13                   perform the actions it takes upon proposed class members' properties;

14               (d) the manner, if any, in which Wells Fargo instructs or trains it agents

15                   that take action upon proposed class members' properties;

16               (e)  the level of supervision, if any, offered by Wells Fargo over its agents

17                   who take action on proposed class members' properties.

18       6.8    Additional common questions of law and fact are addressed below under

19   *CR 23(b)(3): Predominance.*

20                    *CR 23(a)(3): Typicality*

21       6.9    The claims of the Representative Plaintiff are typical of the claims of the

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 16
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

class.

6.10    Representative Plaintiff Rhodes owned the Rhodes Property at the time it was entered upon by Wells Fargo or its agents.

6.11    As such, Representative Plaintiff Rhodes and all members of the class own or owned real property in Washington State, who, prior to completion of any judicial or non-judicial foreclosure, had their property entered upon by Wells Fargo or its agents for purposes of conducting property preservation services upon their property, had their real or personal property located thereon damaged and/or removed by Wells Fargo or its agents, and were denied the full use and enjoyment of their real and/or personal property by Wells Fargo or its agents.

6.12    As a result, Representative Plaintiff Rhodes and all putative class members have been damaged by Wells Fargo's actions, which actions constitute common violations of laws enacted for the protection of Washington State citizens.

6.13    Furthermore, Wells Fargo's defenses to the claims of Representative Plaintiff Rhodes and the proposed class members will be identical due to: (i) Wells Fargo's reliance on a form of deed of trust provision purporting to allow so-called preservation services; (ii) Wells Fargo's common policies and practices vis-à-vis its retention and supervision of agents, performance of preservation services, scope of preservation services performed, its response to consumer complaints, and its response to borrower requests for repair to and return of their property and requests for restoration of full and unfettered access to their property.

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 17
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

1    6.14    In short, because all claims implicate common facts and questions of law,

2  Wells Fargo's defenses will too.

3            ***CR 23(a)(4):  Adequacy of Representation***

4    6.15    Representative Plaintiff Rhodes will fairly and adequately protect the

5  interests of the class.

6            6.15.1 Representative Plaintiff Rhodes comes before this Court as owner

7  of Property that was trespassed upon, damaged, converted, and interfered with.

8            6.15.2 Representative Plaintiff is in the same capacity as any other litigant

9  seeking redress for grievances and class relief for the harm which has occurred.

10           6.15.3 Representative Plaintiff has no interests that are antagonistic to

11  those of the class, and is ready and willing to bring this class action in a representative

12  capacity on behalf of the proposed class.

13    6.16    Plaintiff's counsel will fairly and adequately prosecute the case on behalf

14  of the proposed class.

15           6.16.1 Attorneys Jeffers, Danielson, Sonn & Aylward, P.S., are

16  experienced trial attorneys who have engaged in extensive trial practice and have

17  considerable experience in all aspects of class action litigation from several other class

18  action cases.

19           6.16.2 Plaintiff's counsel have the necessary skills, expertise, and

20  competency to adequately represent the Representative Plaintiff's interests and those of

21  the class.

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 18
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

028

### *CR 23(b)(2): Injunctive Relief*

6.17    Wells Fargo has acted or refused to act on grounds generally applicable to the Representative Plaintiff and all class members, thereby making appropriate final injunctive relief.

6.18    As detailed throughout this Complaint, Wells Fargo or its agents have a common practice of entering upon Washington borrowers' properties for purposes of conducting property preservation services thereupon, damaging or removing borrowers' real or personal property located therein, and denying borrowers the full use and enjoyment of their real and/or personal property.

6.19    Wells Fargo further has a common practice of not adequately training and supervising its agents in the performance of so-called property preservation services, and even instructing its agents to perform certain destructive and disruptive acts.

6.20    Wells Fargo further has a common practice of not repairing, replacing, or reimbursing borrowers when they report property damage as a result of the above acts.

6.21    Wells Fargo has acted in such manners as applicable to Representative Plaintiff Rhodes and all class members.

6.22    For these reasons, Plaintiff seeks class-wide injunctive relief against Wells Fargo to restrain and enjoin these behaviors.

### *CR 23(b)(3): Predominance*

6.23    Numerous legal and factual questions pertaining to the proposed class members predominate over any questions affecting only individual members, including

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 19
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

029

1    but not limited to the following:

2          6.23.1 Form Contract Provisions. Plaintiff will be able to establish the

3    elements of the claims using evidence common to the class because Wells Fargo finds its

4    purported authority to enter upon borrowers' properties from unlawful form contract

5    provisions applicable to all borrowers' properties. These contract provisions are

6    substantively identical in all cases. All such substantively identical form deed of trust

7    provisions were found on July 7, 2016, to be "in direct conflict with state law and . . .

8    unenforceable" by the Washington Supreme Court in *Jordan v. Nationstar Mortgage*,

9    Exhibit D at p. 20. Such provisions are common to all putative class members and do not

10    involve individualized inquiries.

11          6.23.2 The Identity of the Property Owner. Still another element subject

12    to common proof is the identity of the property owner. As the proposed class concerns

13    only those properties entered upon by Wells Fargo prior to completion of any judicial or

14    non-judicial foreclosure, there are no individual questions concerning the identity of the

15    rightful property owner—*the borrower* owned the property at the time of entry, not

16    anyone else. This is further detailed in the *Jordan v. Nationstar Mortgage* opinion, in

17    which the Washington Supreme Court reaffirmed the borrower's right to exclusive

18    possession of the property prior to the completion of any foreclosure proceedings.

19    Exhibit D.

20          6.23.3 Wells Fargo's Relationship with its Agents. Plaintiff will be able

21    to establish the elements of her claims using evidence common to the class because the

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 20
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

primary inquiries involve *Wells Fargo's* conduct. That is, Wells Fargo has a common policy and practice of training and instructing its agents to enter properties, prior to completion of any foreclosure. Wells Fargo further instructs its agents to use whatever means necessary to enter properties, including drilling out the borrower's locks, and, once inside, agents are instructed to, *inter alia*, "trash out" the premises by taking and carrying away personal property found therein. Thus, evidence common to all members of the class includes Wells Fargo's selection of, screening of, training of, instructions to, and oversight of employees/agents. Such evidence is common to all putative class members and does not involve individualized inquiries.

6.23.4 The Conduct of Wells Fargo's Agents in Entering and Damaging or Converting Borrowers' Property. Plaintiff will be able to establish the elements of her claims using evidence common to the class because, as to all putative class members, Wells Fargo's agents acted similarly while on borrowers' properties; namely, they: (a) committed unauthorized entry upon borrowers' properties; (b) conducted unlawful forcible entries involving damage to existing locks, doors and/or windows; (c) damaged and converted personal property found thereon; and (d) interfered with borrowers' full use and enjoyment of their properties. This theory is common to all putative class members and does not involve individualized inquiries.

6.23.5 Wells Fargo's Policies and Procedures for Responding to Customer Complaints. Plaintiff will be able to establish the elements of her claims using evidence common to the class because Wells Fargo's policies and procedures for

COMPLAINT FOR CLASS ACTION AND DAMAGES
Page 21
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

  
1  responding to customer complaints of its agents' entry, conversion of borrowers'

2  property, and interference with borrowers' full use and enjoyment of their property are

3  the same in all cases. That is, Wells Fargo does not immediately restore possession of the

4  property to the owner, does not return or replace the property's original locks, does not

5  remove its locks from the property upon demand, and does not return or replace personal

6  property removed from the property. These facts are common to all putative class

7  members and do not involve individualized inquiries.

8         6.23.6 Class Members' Damages. Plaintiff will be able to establish the

9  elements of her claims using evidence common to the class because all putative class

10 members suffered the same type of damage; namely, injury to real and/or personal

11 property from Wells Fargo's forcible entry, damage to and/or conversion of personal

12 property, and interference with the full use and enjoyment of the property by the

13 borrower. This fact is common to all putative class members and will not require

14 individualized inquiries.

15     6.24    As a result, the prosecution of a class action is superior to other available

16 methods for the fair and efficient adjudication of this controversy.

17     6.25    Individual actions are not likely to seek sufficient damages to warrant

18 assuming the cost of litigation. Here, the damages sustained by each putative class

19 member are not large, generally including damage to doors, windows, and/or personal

20 property within the residence. Therefore, each putative class member will have difficulty

21 maintaining an individual action, and a class action is a superior method to adjudicate

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 22
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

032

1  their claims.

2      6.26    In addition, hundreds to thousands (or more) of individual actions would

3  greatly congest the Washington State courts.

4      6.27    A class action is the most cost-effective way for consumers to prevent

5  future economic and pecuniary loss to hundreds to thousands (or more) of Washington

6  citizens and members of the public at large by Wells Fargo.

7      6.28    This action is superior to any other available method for the fair and

8  efficient adjudication of the controversy.

9  ## VII.    FIRST CAUSE OF ACTION:
## COMMON LAW TRESPASS

10

11      7.1    Wells Fargo and/or its agents wrongfully and intentionally entered onto

12  the Rhodes Property and properties owned by borrowers throughout the state of

13  Washington in advance of the conclusion of any foreclosure proceedings.

14      7.2    As detailed by the Washington Supreme Court in *Jordan v. Nationstar*

15  *Mortgage*, prior to the completion of any foreclosure proceedings, the borrower has the

16  exclusive right to possess their property, and Wells Fargo has no legal right to be there.

17  Exhibit D. Therefore, Wells Fargo's entry upon borrowers' properties is an invasion that

18  affects the borrower's interest in their exclusive possession of the property.

19      7.3    Wells Fargo's intent to invade borrowers' possessory interests is

20  demonstrated by its claimed authority purportedly granted in its form deed of trust

21  provisions, which claim to permit such entries in the event of default or abandonment of

properties—which the Washington Supreme Court recently invalidated.

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 23
1560703

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

7.4    Such intent to enter is further evidenced by Wells Fargo's or its agents' acts of changing borrowers' locks, performance of so-called "preservation services" on borrowers' properties, and the notices left for homeowners to contact Wells Fargo to obtain entry to their properties.

7.5    Wells Fargo remained on the Rhodes Property and on borrowers' properties during the period of entry and thereafter by changing the locks and requiring borrowers to contact Wells Fargo in order to regain full access to their properties.

7.6    It was reasonably foreseeable that Wells Fargo's unauthorized and unlawful entries onto borrowers' properties in advance of the conclusion of any foreclosure proceedings would invade borrowers' possessory interests in those properties.

7.7    As a result of Wells Fargo's acts as detailed above, Representative Plaintiff Rhodes and borrowers suffered the damages detailed herein in an amount to be proven at trial.

## VIII.    SECOND CAUSE OF ACTION: INTENTIONAL TRESPASS (RCW 4.24.630)

8.1    Wells Fargo entered onto the Rhodes Property and properties owned by borrowers throughout the state of Washington.

8.2    Wells Fargo intentionally, unreasonably, and forcibly entered onto such properties, and intentionally and unreasonably damaged or removed property thereon.

8.3    For example, Wells Fargo damaged locks and doors on the Rhodes Property, kept the locks, removed personal property from the Rhodes Property, and denied Representative Plaintiff Rhodes the full use and enjoyment of her personal and

COMPLAINT FOR CLASS ACTION AND DAMAGES
Page 24
1560703

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

real property.

8.4    Wells Fargo intended to act in this manner, as evidenced by its instruction to its agents to engage in these behaviors, and its deliberate acts to engage in these behaviors.

8.5    Wells Fargo knew or had reason to know that it had no authorization to engage in such behaviors because the form contract provisions it relied upon — while unlawful — nevertheless do not authorize damage to real or personal property, do not authorize conversion of personal property located upon or within a property, and do not authorize interference with the owner's (or other lawful occupant's) full use and enjoyment of the property.

8.6    Wells Fargo engaged in the above actions wholly without permission of Representative Plaintiff Rhodes or other Washington borrowers.

8.7    It was substantially certain that Wells Fargo's and/or its agents' above-described actions would damage the Rhodes Property and the properties of other Washington borrowers.

8.8    Wells Fargo's actions are part of its common practice relative to countless Washington borrowers.

8.9    As a result, Wells Fargo wrongfully caused waste or injury to these properties, or wrongfully injured personal property or improvements to real estate on land.

COMPLAINT FOR CLASS ACTION AND DAMAGES
Page 25
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

035

8.10  Wells Fargo's actions above each constitute separate violations of RCW 4.24.630.

8.11  As a direct and proximate result of Wells Fargo's and/or its agents' violations of RCW 4.24.630, Representative Plaintiff Rhodes and class members have suffered damages to their real and personal properties in an amount to be proven at trial.

8.12  Wells Fargo is liable to Representative Plaintiff Rhodes and class members for treble the amount of damages caused by its violations of RCW 4.24.630.

8.13  Wells Fargo is liable to Representative Plaintiff Rhodes and class members for their reasonable attorneys' fees and costs pursuant to RCW 4.24.630.

8.14  Wells Fargo is liable to Representative Plaintiff Rhodes and class members for their reasonable attorneys' fees and costs pursuant to RCW 4.24.630.

## IX.  THIRD CAUSE OF ACTION:
## VIOLATION OF CONSUMER PROTECTION ACT (RCW 19.86, *et seq.*)

9.1  Wells Fargo Engaged in Unfair or Deceptive Acts and Practices.

9.1.1  The following actions of Wells Fargo constitute unfair *and* deceptive acts and practices for the purposes of RCW 19.86, *et seq.*:  Wells Fargo's common practices of unlawfully entering borrowers' properties in advance of the conclusion of any foreclosure proceedings; forcible entries via drilling out existing door locks; keeping the locks; damaging doors and windows, removing personal property; refusing to refund, repair, or compensate for damage caused and property taken; denying owners or legal occupants the full use and enjoyment of their real and/or personal property; and failing to respond or timely respond to demands for repairs, return of

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 26
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

1   property, and access to their property.

2         9.1.2   These acts are unfair because the Washington Supreme Court in

3   *Jordan v. Nationstar Mortgage* recently deemed such practices a clear violation of

4   Washington state law, and the deed of trust provisions purporting to authorize them

5   unenforceable as contrary to law.  These acts are further unfair because of the unequal

6   bargaining power between the individual homeowner or occupant and a large, multi-

7   national company who (or on whose behalf its agents) forcibly enters properties, drills

8   out the existing locks, places its own locks on the properties, interferes with owners' or

9   legal occupants' full use and enjoyment of the properties, converts personal property

10  located upon the properties, and refuses to return or replace damaged or converted

11  property to the rightful owner.

12        9.1.3   These acts are deceptive because when Wells Fargo or its agents

13  perform them, the property owner is unaware that they are occurring, and such acts are

14  not authorized via any form deed of trust provision.

15        9.1.4   Wells Fargo engaged in similar unfair and deceptive acts and

16  practices vis-à-vis many Washington borrowers.

17        9.2   Wells Fargo's Acts Occurred in Trade or Commerce.   Wells Fargo's

18  unfair and deceptive acts occurred in trade or commerce because, on information and

19  belief, Wells Fargo is one of the largest lenders in the country and was the lender in

20  charge of servicing the Rhodes Property/class members' properties at the time of the

21  challenged acts.

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 27
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

037

1    9.3    Wells Fargo's Acts Impact the Public Interest.

2    9.3.1    Wells Fargo's unfair or deceptive acts impacted the public interest

3 because they were committed in the course of Wells Fargo's business, Wells Fargo

4 advertises similar services to the public in general, and Wells Fargo and Representative

5 Plaintiff Rhodes/class members (as an individual consumers) occupy unequal bargaining

6 positions.

7    9.3.2    Wells Fargo engages in a course of conduct whereby the same or

8 similar unfair or deceptive acts are repeated as to borrowers across Washington State.

9    9.3.3    There exists a real and substantial potential for repetition of Wells

10 Fargo's conduct in the future because, on information and belief, Wells Fargo is one of

11 the largest lenders in the country.

12    9.4    Causation.

13    9.4.1    Causation is satisfied through the common proof that Wells

14 Fargo's policy and practice is to instruct its agents to enter borrowers' homes, to do so

15 forcibly, to remove personal property therefrom, and to place and maintain its own locks

16 and lock boxes on borrowers' properties.

17    9.4.2    These common instructions proximately cause borrowers' damages

18 because, *but for* Wells Fargo's instructions to its agents, there would be no entry,

19 conversion, or interference resulting in damage to borrowers.

20    9.5    Injury to Business or Property.  As a direct and proximate result of Wells

21 Fargo's unfair or deceptive acts as set forth above, Representative Plaintiff Rhodes and

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 28
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

1    class members have suffered injury to their properties in an amount to be proven at trial.

2        9.6    Wells Fargo's above-listed unfair or deceptive acts constitute violations of

3    RCW 19.86, *et seq.*

4        9.7    Wells Fargo is liable to Representative Plaintiff Rhodes and class

5    members for treble the amount of their damages, including those arising from the

6    interference with the full use and enjoyment of their real and/or personal properties,

7    caused by the violations of RCW 19.86, *et seq.*

8        9.8    Wells Fargo is liable to Representative Plaintiff Rhodes and class

9    members for their reasonable attorneys' fees and costs pursuant to RCW 19.86, *et seq.*

### X.    FOURTH CAUSE OF ACTION: CONVERSION

10.1    Wells Fargo instructs its agents to remove personal property and belongings from borrowers' residences in the course of "preservation services."

10.2    Representative Plaintiff Rhodes and class members enjoyed a possessory property interest in the personal property that Wells Fargo or its agents removed from the borrowers' properties because the locks and other items that were taken belonged to Representative Plaintiff Rhodes and class members.

10.3    Wells Fargo's removal was unjustified because Wells Fargo intentionally removed personal property belonging to Representative Plaintiff Rhodes and class members, without consent or permission and without authority of the court.

10.4    Wells Fargo's acts constitute willful interference with chattel because Wells Fargo acted intentionally and its acts of removal deprived Representative Plaintiff

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 29
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

1   Rhodes and class members of the possession and control of their personal property.

2       10.5   To date, Wells Fargo has not returned the personal property it took from

3   Representative Plaintiff Rhodes and class members' properties.

4       10.6   Such failure to return constitutes an unjustified and willful interference

5   with Representative Plaintiff Rhodes and class members' personal property, and

6   demonstrates an intent to exercise permanent dominion or control over Representative

7   Plaintiff Rhodes and class members' personal property.

8       10.7   Wells Fargo's unjustified interference with Representative Plaintiff

9   Rhodes and class members' personal property with intent to exercise dominion and

10  control of the personal property without lawful justification constitute acts of conversion.

11      10.8   As a direct and proximate result of Wells Fargo's conversion,

12  Representative Plaintiff Rhodes and class members suffered damages in an amount to be

13  proven at trial.

14  **PRAYER FOR RELIEF**

15      WHEREFORE, Representative Plaintiff Rhodes, and on behalf of others similarly

16  situated, demands judgment against Wells Fargo as follows:

17      1.   For entry of a judgment in favor of Representative Plaintiff Rhodes and

18  class members against Wells Fargo for damages in an amount to be proven at trial,

19  including treble damages pursuant to RCW 4.24.630, RCW 19.86.090, and/or other

20  applicable law;

21

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 30
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

2.     For entry of a judgment in favor of Representative Plaintiff Rhodes and class members and against Wells Fargo for reasonable attorneys' fees and costs pursuant to RCW 4.24.630, RCW 19.86.090, and/or other applicable law;

3.     For injunctive relief restraining Wells Fargo from further violation of RCW 19.86, *et seq.*, as alleged herein; and

4.     For such other and further relief as the Court deems just and equitable.

DATED this 8th day of December, 2016.

JEFFERS, DANIELSON, SONN & AYLWARD, P.S.

By _____
CLAY M. GATENS, WSBA No. 34102
SALLY F. WHITE, WSBA No. 49457
Attorneys for Plaintiff

COMPLAINT FOR CLASS ACTION AND
DAMAGES
Page 31
1560702

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

041

# EXHIBIT A

FILED

SEP 1 2 2012

Kim Morrison
Chelan County Clerk

IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON

COUNTY OF CHELAN

| | | |
|---|---|---|
| LAURA ZAMORA JORDAN, as her separate estate, and on behalf of others similarly situated, | ) ) ) ) | NO. 12-2-00385-2 |
| | | FIRST AMENDED COMPLAINT FOR DAMAGES |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company, | ) ) ) | |
| Defendant. | ) ) ) | |

Plaintiff, LAURA ZAMORA JORDAN, by and through her attorneys of record, Jeffers, Danielson, Sonn & Aylward, P.S., by Clay M. Gatens and Michelle A. Green, for cause of action against the Defendant herein, alleges as follows:

## I. PARTIES

1.1    Plaintiff, LAURA ZAMORA JORDAN, was at all times material hereto a resident of Chelan County, Washington.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 1
974759

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

043

1      1.2    On information and belief, at all times relevant hereto, Defendant

2  NATIONSTAR MORTGAGE, LLC ("Nationstar"), was a Delaware limited liability

3  company transacting business in Chelan County, Washington.

4                    **II. JURISDICTION AND VENUE**

5      2.1    Jurisdiction and venue are appropriate in the Chelan County Superior Court

6  pursuant to RCW 4.12.010 and RCW 4.12.020.

7                            **III. FACTS**

8      3.1    Plaintiff, LAURA ZAMORA JORDAN, f/k/a LAURA ZAMORA ("Mrs.

9  Jordan"), is the fee title owner of a single family home located at 1318 9th Street,

10  Wenatchee, Washington 98801 (the "Jordan Residence").

11      3.2    Nationstar is the beneficiary of a deed of trust secured by the Jordan

12  Residence and recorded under Chelan County Auditor Number 2265162 (the "Deed of

13  Trust").   The Deed of Trust contains a provision, which states that if Mrs. Jordan

14  abandons the Jordan Residence, the lender may do whatever is reasonable and

15  appropriate to protect the lender's interest in the Jordan Residence and secure the Jordan

16  Residence, including entering the Jordan Residence to change the locks (the "Entry

17  Provision").

18      3.3    Nationstar has not, at any time, commenced any judicial or non-judicial

19  foreclosure proceedings relative to Mrs. Jordan or the Jordan Residence.

20      3.4    On or about April 3, 2011, Nationstar and/or its agents entered the Jordan

21  Residence, removed the existing locks, and installed at lockbox, without any notice to

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 2
074759

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

Mrs. Jordan and despite that Mrs. Jordan was then residing at the Jordan Residence and the Jordan Residence contained Mrs. Jordan's belongings. The Jordan Residence did not appear to be abandoned and Mrs. Jordan's belongings inside the residence were readily observable upon a simple visual inspection of the Jordan Residence.

3.5    On or about April 4, 2011, Mrs. Jordan returned to the Jordan Residence to discover that the locks to the residence had been changed. A sign posted on the interior window of the Jordan Residence stated that the locks had been changed by non-party Field Asset Services, Inc. There was a telephone number listed on the notice. Mrs. Jordan called this number and spoke with a representative of Nationstar. The Nationstar representative asked if Mrs. Jordan was still living at the Jordan Residence. Mrs. Jordan informed the Nationstar representative that she was still living at the Jordan Residence and that all of her belongings were at the Jordan Residence. Mrs. Jordan stated that she was in a panic because Nationstar had changed the lock and she could not access her home or her belongings. When Mrs. Jordan stated she needed access to her home and belongings, the Nationstar representative informed Mrs. Jordan that she needed to contact a realtor to list the Jordan Residence for sale. Mrs. Jordan asked if she needed to move out of the Jordan Residence since she could not afford to pay her loan. The Nationstar representative again directed Mrs. Jordan to list the Jordan Residence for sale.

3.6    Mrs. Jordan stated that she was confused, did not understand why she was being locked out of her home, and pleaded with the Nationstar representative to give her access to her home so that she could get her belongings, including her clothing so that she

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 3

1    could go to work. Nationstar's representative gave Mrs. Jordan a temporary access code

2    to open the key lockbox that had been placed on the front door of the Jordan Residence

3    so that she could retrieve her belongings. Nationstar's agent asked Mrs. Jordan how long

4    it would take her to remove her belongings and told Mrs. Jordan that she needed to put

5    the key back inside the lockbox once she had removed her belongings. Nationstar's

6    representative again directed Mrs. Jordan to contact a realtor to list the Jordan Residence

7    for sale, stating that the sale would be for the benefit of Nationstar.

8        3.7    Mrs. Jordan asked if Nationstar was going to start a foreclosure against

9    her. The Nationstar representative informed Mrs. Jordan that Nationstar would be

10   starting a judicial foreclosure against her, but that it was not necessary for Mrs. Jordan to

11   appear in court when she received the notices.

12       3.8    Within twelve (12) days, Mrs. Jordan removed all of her personal property

13   from the Jordan Residence and moved in with her parents. Since removing her personal

14   belongings from the Jordan Residence, neither Mrs. Jordan nor her agents have had use

15   or possession of the Jordan Residence.

16       3.9    Nationstar has not responded to demands to remove the locks from the

17   Jordan Residence.

18       3.10    No foreclosure proceedings have been instituted against Mrs. Jordan

19   relative to the Jordan Residence.

20

21

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 4
974759

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

3.11    Nationstar continues to send payment requests to Mrs. Jordan, despite notice from Mrs. Jordan's legal counsel to direct all communication and collection efforts to Mrs. Jordan's legal counsel.

3.12    Nationstar has billed Mrs. Jordan for fees relating to the wrongful changing of the locks and is attempting to collect amounts, despite notice from Mrs. Jordan's legal counsel to direct all communication and collection efforts to Mrs. Jordan's legal counsel.

## IV.  FIRST CAUSE OF ACTION:
### TRESPASS

4.1    Nationstar and/or its agents wrongfully and without authorization entered upon the Jordan Residence.

4.2    Nationstar's and/or its agents' actions constitute trespass.

4.3    As a direct and proximate result of this trespass, Mrs. Jordan has suffered damages in an amount to be proven at trial.

## V.  SECOND CAUSE OF ACTION:
### RCW 4.24.630 / INTENTIONAL TRESPASS

5.1    Nationstar and/or its agents intentionally and unreasonably entered upon the Jordan Residence, knowing or having reason to know that it and/or they lacked authorization to do so, and wrongfully removed existing locks from the Jordan Residence.

5.2    Nationstar and/or its agents wrongfully caused waste and/or injury to the Jordan Residence.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 5
074759

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

5.3    Nationstar and/or its agents wrongfully caused injury to Jordan's personal property and/or Jordan's improvements at the Jordan Residence when it and/or they wrongfully removed the existing locks at the Jordan Residence and installed the lockbox at the Jordan Residence.

5.4    Nationstar's and/or its agents' actions above each constitute separate intentional trespasses under RCW 4.24.630 because Nationstar knew or had reason to know that it lacked authority to so act.

5.5    As a direct and proximate result of these intentional trespasses, Jordan has suffered damages in an amount to be proven at trial.

5.6    Nationstar is liable to Jordan for treble the amount of damages caused by its intentional trespasses.

5.7    Nationstar is liable to Jordan for her reasonable attorney's fees and costs.

## VI. THIRD CAUSE OF ACTION:
## SEVERE EMOTIONAL DISTRESS/OUTRAGE

6.1    Mrs. Jordan was frightened when she learned that she was locked out of her house. Mrs. Jordan was also traumatized by the experience of having to immediately remove her personal items from her home and find a place to live. Mrs. Jordan suffered embarrassment and anxiety regarding the actual status of her home, which continues to date.

6.2    As a direct and proximate result of Nationstar's and/or its agents' actions, Mrs. Jordan has suffered, and continues to suffer, severe emotional distress.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 6
974759

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

## VII. FOURTH CAUSE OF ACTION:
## VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT

7.1    Nationstar's and/or its agents' actions in entering the Jordan Residence and changing the locks without authorization constitute a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et. seq.

7.2    Nationstar's and/or its agents' actions in failing to remove the lock box after Mrs. Jordan notified Nationstar that she was living at the Jordan Residence and that all of her belongings were inside the Jordan Residence constitute a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et. seq.

7.3    Nationstar's and/or its agents' actions in informing Jordan that she no longer had any right to access or remain at the Jordan Residence and/or that Mrs. Jordan needed to list the Jordan Residence for sale constitute a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et. seq.

7.4    Nationstar's and/or its agents' actions in informing Mrs. Jordan that it was not necessary for her to appear in court when Nationstar commenced a judicial foreclosure against her constitute a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et. seq.

7.5    Nationstar's and/or its agents' actions in continuing to contact Mrs. Jordan, despite notice to direct all communication and collection efforts to Mrs. Jordan's legal counsel, constitute a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et. seq.

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P O Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

7.6    Nationstar's and/or its agents' actions in billing Mrs. Jordan for fees relating to the wrongful lock change and attempting to collect such amounts, constitute a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et. seq.

7.7    The Entry Provision in the Deed of Trust authorizing Nationstar to enter the Jordan Residence and change the locks if the property is abandoned without the necessity of a court-appointed receiver is unenforceable, and constitutes a violation of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 et. seq.

7.8    As a direct and proximate result of Nationstar's and/or its agents' violations of the Fair Debt Collection Practices Act above, Mrs. Jordan has suffered damages in an amount to be proven at trial.

7.9    Nationstar is liable to Mrs. Jordan for her reasonable attorney's fees and costs.

## VIII. FIFTH CAUSE OF ACTION:
## VIOLATION OF CONSUMER PROTECTION ACT

8.1    Nationstar's and/or its agents' actions in entering the Jordan Residence and changing the locks without authorization constitute unfair or deceptive acts in trade or commerce in violation of the Consumer Protection Act, RCW 19.86 et. seq.

8.2    Nationstar's and/or its agents' actions in failing to remove the lock box after Mrs. Jordan notified Nationstar that she was living at the Jordan Residence and that all of her belongings were inside the Jordan Residence constitutes unfair or deceptive acts in trade or commerce in violation of the Consumer Protection Act, RCW 19.86 et. seq.

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

8.3    Nationstar's and/or its agents' actions in informing Jordan that she no longer had any right to access or remain at the Jordan Residence and/or that Mrs. Jordan needed to list the Jordan Residence for sale constitute unfair or deceptive acts in trade or commerce in violation of the Consumer Protection Act, RCW 19.86 et. seq.

8.4    Nationstar's and/or its agents' actions in informing Mrs. Jordan that it was not necessary for her to appear in court when Nationstar commenced a judicial foreclosure against her constitute unfair or deceptive acts in trade or commerce in violation of the Consumer Protection Act, RCW 19.86 et. seq.

8.5    Nationstar's and/or its agents' actions in continuing to contact Mrs. Jordan, despite notice to direct all communication and collection efforts to Mrs. Jordan's legal counsel, constitute unfair or deceptive acts in trade or commerce in violation of the Consumer Protection Act, RCW 19.86 et. seq.

8.6    Nationstar's and/or its agents' actions in billing Mrs. Jordan for fees relating to the wrongful lock change and attempting to collect such amounts constitute unfair or deceptive acts in trade or commerce in violation of the Consumer Protection Act, RCW 19.86 et. seq.

8.7    The Entry Provision in the Deed of Trust authorizing Nationstar to enter the Jordan Residence and change the locks if the property is abandoned without the necessity of a court-appointed receiver is unenforceable, and constitutes an unfair or deceptive act in trade or commerce in violation of the Consumer Protection Act, RCW 19.86 et. seq.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 9
974759

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2412 FAX

8.8    Nationstar's violations of the Consumer Protection Act set forth above are injurious to the public interest and have/had the capacity to injure or deceive other persons and/or the public. It is likely that additional persons have been or will be injured in the same manner as Mrs. Jordan in this case.

8.9    As a direct and proximate result of Nationstar's and/or its agents' violations of the Consumer Protection Act set forth above, Mrs. Jordan has suffered damages, including damages to her property, in an amount to be proven at trial.

8.10    Treble damages are properly awardable for Nationstar's violations of the Consumer Protection Act under RCW 19.86.090.

8.11    Nationstar is liable to Mrs. Jordan for her reasonable attorney's fees and costs.

## IX.  SIXTH CAUSE OF ACTION: BREACH OF CONTRACT

9.1    To the extent the Court determines the Entry Provision is enforceable, the Deed of Trust requires that Nationstar, or its agents or assigns, have reasonable cause to enter upon the Jordan Residence. No reasonable cause existed for Nationstar and/or its agents to enter upon the Jordan Residence or to determine the Jordan Residence was abandoned. Furthermore, Nationstar and/or its agents, did not give any prior notice to Mrs. Jordan before entry upon the Jordan residence.

9.2    Nationstar's and/or its agents' actions above constitute a breach of the terms of the Deed of Trust.

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 10
074759

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

1    9.3    As a direct and proximate result of Nationstar's breach, Mrs. Jordan has

2  suffered damages in an amount to be proven at trial.

3    9.4    Nationstar is liable to Mrs. Jordan for her reasonable attorney's fees and

4  costs.

5    ### X. PRAYER FOR RELIEF

6    WHEREFORE, Plaintiff demands judgment against Defendant as follows:

7    1.    For entry of a judgment in favor of Plaintiff against Defendant for

8  damages in an amount to be proven at trial, including treble damages as set forth above;

9    2.    For entry of a judgment in favor of the Plaintiff and against the Defendant

10  for her reasonable attorney's fees and costs pursuant to RCW 4.24.630, RCW 19.86.090, 15

11  U.S.C. §1692 et. seq., and/or other applicable law; and

12    3.    For such other and further relief as the Court deems just and equitable.

13

14    DATED this _12th_ day of September, 2012.

15    JEFFERS, DANIELSON, SONN & AYLWARD, P.S.

16

17    By _____

18    CLAY M. GATENS, WSBA #34102
     MICHELLE A. GREEN, WSBA #40077
     Attorneys for Plaintiff

19

20

21

FIRST AMENDED COMPLAINT FOR DAMAGES
Page 11
974759

Jeffers, Danielson, Sonn & Aylward, P.S.
Attorneys at Law
2600 Chester Kimm Road / P.O. Box 1688
Wenatchee, WA 98807-1688
(509) 662-3685 / (509) 662-2452 FAX

# EXHIBIT B

Case 2:14-cv-00175-TOR    Document 72    Filed 08/10/15

1

2

3

4

5              UNITED STATES DISTRICT COURT

6             EASTERN DISTRICT OF WASHINGTON

7   LAURA ZAMORA JORDAN, as her
    separate estate, and on behalf of others        NO:  2:14-CV-0175-TOR
8   similarly situated,
                                                    ORDER CERTIFYING QUESTIONS
9                          Plaintiff,               TO WASHINGTON SUPREME
                                                    COURT
10       v.

11  NATIONSTAR MORTGAGE, LLC, a
    Delaware limited liability company,
12
                           Defendant.
13

14       On July 30, 2015, this Court heard oral argument on Nationstar's Motion for

15  Partial Summary Judgment (ECF No. 45) and Plaintiff's Motion for Partial

16  Summary Judgment (ECF No. 61).

17       Finding that the instant motions present questions of state law that have not

18  been clearly determined by either the Washington Supreme Court or the

19  Washington appellate courts and that answers to these questions are necessary to

20

ORDER CERTIFYING QUESTIONS TO WASHINGTON SUPREME COURT ~ 1

1  dispose of these motions, this Court, upon its own motion, certifies to the

2  Washington Supreme Court several questions of law.

### DISCUSSION

4  RCW chapter 2.60 governs the procedure for a federal court to certify a

5  question of state law to the Washington Supreme Court:

> When in the opinion of any federal court before whom a proceeding is
> pending, it is necessary to ascertain the local law of [Washington] in
> order to dispose of such proceeding and the local law has not been
> clearly determined, such federal court may certify to the supreme
> court for answer the question of local law involved and the supreme
> court shall render its opinion in answer thereto.

RCW 2.60.020.[1]  Certification is particularly appropriate when the state law issue

is especially complex and presents significant policy implications. *Perez-Farias v.*

*Glob. Horizons, Inc.*, 668 F.3d 589, 593 (9th Cir. 2011); *see also Keystone Land &*

*Dev. Co. v. Xerox Corp.*, 353 F.3d 1093, 1097 (9th Cir. 2003) (holding that

certification is appropriate where an unsettled issue of law, if clarified definitively,

_____

[1] Pursuant to the Washington Rules of Appellate Procedure, "[t]he Supreme Court

may entertain a petition to determine a question of law certified to it under the

Federal Court Local Law Certificate Procedure Act if the question of state law is

one which has not been clearly determined and does not involve a question

determined by reference to the United States Constitution." Wash. R. App. P.

16.16(a).

ORDER CERTIFYING QUESTIONS TO WASHINGTON SUPREME COURT ~ 2

Case 2:14-cv-00175-TOR     Document 72     Filed 08/10/15

1  would have "far-reaching effects" on those subject to Washington law).  As noted

2  by the Supreme Court, the certification procedure, when appropriately invoked,

3  saves "time, energy, and resources and helps build a cooperative judicial

4  federalism." *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974).  Such a procedure

5  "may be invoked by a federal court upon its own motion or upon the motion of any

6  interested party in the litigation involved."  RCW 2.60.030(1).

7       Here, the parties' cross-motions for partial summary judgment present

8  complex issues of state law, which have significant policy implications and will

9  have far-reaching effects on those in Washington.  Put succinctly, this Court has

10  been asked to decide whether so-called Entry Provisions within the deeds of trust

11  of Plaintiff and other class members are enforceable under Washington law absent

12  post-default consent of the borrower or permission from a court.  Nationstar

13  contends the Provisions—akin to a limited license or similar non-possessory

14  interest in land—merely grant the lender the ability to enter, maintain, and secure

15  the encumbered property and that such conduct does not constitute possession in

16  violation of Washington's lien theory of mortgages.  Ms. Jordan, on the other hand,

17  contends the Entry Provisions unlawfully deprive a borrower of her exclusive right

18  to possession prior to foreclosure and that the borrower cannot agree by contract to

19  relinquish such a right prior to default.  Instead, Ms. Jordan asserts that the lender

20

ORDER CERTIFYING QUESTIONS TO WASHINGTON SUPREME COURT ~ 3

1  either must obtain post-default consent of the borrower or a court-appointed

2  receiver pursuant to RCW chapter 7.60.

3        Because of the complexity of the state law issues presented in the parties'

4  cross-motions for partial summary judgment and their significant policy

5  implications, this Court finds that the Washington Supreme Court, which has not

6  had occasion to settle these issues, "is better qualified to answer the certified

7  questions in the first instance." *See Perez-Farias*, 668 F.3d at 593 (alteration

8  omitted). Further, this Court finds the Washington Supreme Court's answers are

9  "necessary . . . in order to dispose of [this] proceeding." RCW 2.60.020.

10                **STATEMENT OF UNDISPUTED MATERIAL FACTS**

11        The undisputed material facts are as follows:

12        In 2007, Ms. Jordan bought a home in Wenatchee, Washington, and, like

13  other class members, secured her home loan by signing a deed of trust. ECF No.

14  3-5 at 54-69. Homecomings Financial was the original lender named in the deed

15  of trust, *id.* at 54; however, it subsequently assigned the loan to Fannie Mae, ECF

16  Nos. 46 ¶ 11; 59 ¶ 2. The deed of trust contains the following provision, which

17

18

19

20

ORDER CERTIFYING QUESTIONS TO WASHINGTON SUPREME COURT ~ 4

Case 2:14-cv-00175-TOR    Document 72    Filed 08/10/15

1  permits the lender[2] to enter, maintain, and secure the property after the borrower's

2  default or abandonment:

> 9.        **Protection of Lender's Interest in the Property and
> Rights Under this Security Instrument.** If (a) Borrower fails to
> perform the covenants and agreements contained in this Security
> Instrument, (b) there is a legal proceeding that might significantly
> affect Lender's interest in the Property and/or rights under this
> Security Instrument (such as a proceeding in bankruptcy, probate, for
> condemnation or forfeiture, for enforcement of a lien which may
> attain priority over this Security Instrument or to enforce laws or
> regulations), or (c) Borrower has abandoned the Property, then Lender
> may do and pay for whatever is reasonable or appropriate to protect
> Lender's interest in the Property and rights under this Security
> Instrument, including protecting and/or assessing the value of the
> Property, and securing and/or repairing the Property. Lender's actions
> can include, but are not limited to: (a) paying any sums secured by a
> lien which has priority over this Security Instrument; (b) appearing in
> court; and (c) paying reasonable attorneys' fees to protect its interest
> in the Property and/or rights under this Security Instrument, including
> its secured position in a bankruptcy proceeding. Securing the Property
> includes, but is not limited to, entering the Property to make repairs,
> change locks, replace or board up doors and windows, drain water
> from pipes, eliminate building or other code violations or dangerous
> conditions, and have utilities turned on or off. Although Lender may
> take action under this Section 9, Lender does not have to do so and is
> not under any duty or obligation to do so. It is agreed that Lender
> incurs no liability for not taking any or all actions authorized under
> this Section 9.

---

18  [2] Pursuant to the terms of the deed of trust, "[t]he covenants and agreements of

19  [t]he Security Instrument shall bind . . . and benefit the successors and assigns of

20  Lender." ECF No. 3-5 at 63.

ORDER CERTIFYING QUESTIONS TO WASHINGTON SUPREME COURT ~ 5

059

Case 2:14-cv-00175-TOR    Document 72    Filed 08/10/15

1    ECF No. 3-5 at 61. The deed of trust contains another provision discussing the

2    borrower's obligation to preserve, maintain, and protect the property. *Id.* at 60.

3    This provision allows the lender "or its agent [to] make reasonable entries upon

4    and inspections of the property" but only if the lender has reasonable cause and

5    first gives the borrower notice. *Id.* These two provisions comprise the so-called

6    "Entry Provisions."

7       Ms. Jordan made her last loan payment in December 2010 and subsequently

8    went into default. ECF No. 3-3 ¶ 7. In March 2011, Nationstar—whom Fannie

9    Mae had hired to service the loan in 2008, *id.* ¶ 3—hired a vendor to perform an

10    exterior inspection of Ms. Jordan's property and the vendor preliminarily

11    determined that it was vacant.[3] ECF Nos. 3-5 at 46, 48; 3-8 ¶ 10 (citing ECF No.

12    3-8 at 6-8). Nationstar then ordered entry of Ms. Jordan's property. ECF No. 3-8

13    ¶¶ 11-12. The vendor changed the lock on the front door and posted the following

14    notice:

15       NOTICE[:] THIS PROPERTY WAS FOUND TO BE UNSECURE
       OR VACANT. In protection of the interest of the owner as well as
16       the mortgagee, and in accordance with the terms of this mortgage, the
       property has been secured against entry by unauthorized persons to
17       prevent possible damage. The key will be available to the owner of
       the property or their representative only.

18

19    [3] The parties dispute whether Ms. Jordan had actually abandoned or otherwise

20    vacated her home when Nationstar ordered entry. ECF Nos. 62 ¶ 12; 67 at 3.

ORDER CERTIFYING QUESTIONS TO WASHINGTON SUPREME COURT ~ 6

ECF No. 63-1 at 6, 9. The Notice also provided Ms. Jordan a name and telephone number to contact "for further information." *Id.*

Ms. Jordan subsequently called the number, obtained the key, and re-entered her home. ECF No. 3-5 at 11-14. Ms. Jordan removed her possessions from the home the next day, returned the key to the lock box, and vacated the property. *Id.* at 15, 20. Nationstar's vendors have since winterized the property and maintained its lawn. ECF No. 3-8 ¶ 18.

On April 3, 2012, Ms. Jordan filed her Complaint in Chelan County Superior Court against Nationstar Mortgage, LLC, alleging numerous state law causes of action, including trespass, breach of contract, violation of the Washington Consumer Protection Act, as well as violation of the Fair Debt Collection Practices Act ("FDCPA").[4] ECF No. 2-4. Nationstar subsequently removed the case to this Court.[5] ECF No. 1.

---

[4] Ms. Jordan subsequently filed a First and Second Amended Complaint alleging these same claims and seeking class action relief. ECF Nos. 2-13; 2-19.

[5] On September 9, 2014, this Court remanded proceedings to the Chelan County Superior Court, finding that Nationstar's removal was untimely. ECF No. 18. On April 1, 2015, the Ninth Circuit reversed and remanded this decision in light of a

ORDER CERTIFYING QUESTIONS TO WASHINGTON SUPREME COURT ~ 7

Case 2:14-cv-00175-TOR    Document 72    Filed 08/10/15

1    The parties then filed cross motions for partial summary judgment on two

2    similar, but distinguishable, legal issues.[6]  Nationstar's motion asked the Court to

3    hold as a matter of law that the so-called Entry Provisions within the deed of trust

4    are enforceable under Washington law. ECF No. 45 at 8-9.  Ms. Jordan's motion,

5    on the other hand, asked the Court to hold as a matter of law that, before the lender

6    can lawfully act upon the Entry Provisions, the lender is first required to obtain the

7    borrower's post-default consent or permission from a court. ECF No. 61 at 3.[7]

8                                      **QUESTIONS OF LAW**

9    "[The Washington Supreme Court does] not consider the legal issues in the

10   abstract but instead consider[s] them based on the certified record that the federal

11   court provides." *Bradburn v. N. Cent. Reg'l Library Dist.*, 168 Wash. 2d 789, 799

---

12   recent Supreme Court ruling instructing courts to interpret the provisions of the

13   Class Action Fairness Act broadly in favor of removal.  ECF No. 39.

14   [6] Whether Nationstar's vendors actual activities exceeded the scope of the lender's

15   permission, relevant for Plaintiff's trespass claims, is a question of fact not yet

16   before the Court.

17   [7] Nationstar also moved for summary judgment on Ms. Jordan's individual Fair

18   Debt Collection Practices Act ("FDCPA") claim.  ECF No. 45 at 23-24.  Ms.

19   Jordan conceded that summary judgment should be entered on this claim.  ECF

20   No. 57 at 19.  This Court dismissed this claim in a separate order.


ORDER CERTIFYING QUESTIONS TO WASHINGTON SUPREME COURT ~ 8

1    (2010). "Once the court has decided to rule on a certified question pursuant to

2    RCW 2.60.020, the ruling is not advisory but resolves actual issues pending in the

3    federal proceeding and will be legal precedent in all future controversies involving

4    the same legal question." *Gray v. Suttell & Assocs.*, 181 Wash. 2d 329, 337

5    (2014).

6        The Court certifies the following questions of law:

7        (1) Under Washington's lien theory of mortgages and RCW 7.28.230(1),
           can a borrower and lender enter into a contractual agreement prior to
8          default that allows the lender to enter, maintain, and secure the
           encumbered property prior to foreclosure?

9
         (2) Does RCW chapter 7.60, Washington's statutory receivership scheme,
10         provide the exclusive remedy, absent post-default consent by the
           borrower, for a lender to gain access to an encumbered property prior to
11         foreclosure?

12       This Court's framing of the questions is not intended to restrict the

13   Washington Supreme Court's consideration of any issues it determines are

14   relevant. *See Keystone*, 353 F.3d at 1098. This Court further acknowledges that

15   the Washington Supreme Court may, in its discretion, reformulate the questions if

16   it decides to answer these certified questions. *Perez-Farias*, 668 F.3d at 589.

17   **ACCORDINGLY, IT IS ORDERED:**

18       1. This Court **CERTIFIES** the above questions of law.

19       2. Further proceedings in this Court are **STAYED** pending the Washington

20

ORDER CERTIFYING QUESTIONS TO WASHINGTON SUPREME COURT ~ 9

1  Supreme Court's decision whether it will accept review, and if so, the proceedings

2  will remain stayed pending receipt of the answers to the certified questions.

3      3. If the Washington Supreme Court accepts review of the certified

4  questions, this Court designates Ms. Jordan and others similarly situated to file the

5  first brief. *See* Wash. R. App. P. 16.16(e)(1).

6      4. If the Washington Supreme Court accepts review of the certified

7  questions, the parties shall file a joint status report every six months from the date

8  of the acceptance, or more frequently if the circumstances so warrant.

9      5. The District Court Executive is directed to submit to the Washington

10  Supreme Court certified copies of this Order, the docket in the above-captioned

11  matter, and Docket Numbers 3-3, 3-5, 3-8, 45, 46, 47, 58, 59, 60, 61, 62, 63, 66,

12  67, 68, and 69. The record so compiled contains all matters in the pending cause

13  of action material for consideration of the certified questions. *See* RCW

14  2.60.010(4).

15      6. The District Court Executive is further directed to enter this Order and

16  provide copies to counsel.

17  **DATED** August 10, 2015



18

19                   THOMAS O. RICE
                United States District Judge
20

ORDER CERTIFYING QUESTIONS TO WASHINGTON SUPREME COURT ~ 10

# EXHIBIT C

# THE SUPREME COURT
STATE OF WASHINGTON

RONALD R. CARPENTER
SUPREME COURT CLERK

SUSAN L. CARLSON
DEPUTY CLERK / CHIEF STAFF ATTORNEY



TEMPLE OF JUSTICE
P.O. BOX 40929
OLYMPIA, WA 98504-0929

(360) 357-2077
e-mail: supreme@courts.wa.gov
www.courts.wa.gov

August 18, 2015

LETTER SENT BY E-MAIL

Beau C. Haynes
Law Office of David N. Mark
810 3rd Avenue, Suite 500
Seattle, WA 98104-1619

Clay M. Gatens
Michelle A Green
JDSA
2600 Chester Kimm Rd
Wenatchee, WA 98801-8116

Michael Duane Daudt
Daudt Law PLLC
200 W Thomas Street, Suite 420
Seattle, WA 98119

John Alan Knox
William Kastner & Gibbs, PLLC
601 Union Street, Suite 4100
Seattle, WA 98101-1368

Andrew W. Noble
Jan T. Chilton
Mary Kate Sullivan
Severson & Werson, APC
One Embarcadero Center, Suite 2600
San Francisco, CA 94111

Hon. James R. Larsen, Clerk **(sent by U.S. mail only)**
U.S. District Court
Eastern District of Washington
P.O. Box 1493
Spokane, WA 99210

Re:    Supreme Court No. 92081-8 - Laura Zamora Jordan v. Nationstar Mortgage, LLC
       U.S. District Court, Eastern District of Washington, No. 2:14-CV-0175-TOR

Clerk and Counsel:

The "ORDER CERTIFYING QUESTIONS TO WASHINGTON SUPREME COURT" entered by the United States District Court for the Eastern District of Washington on August 10, 2015, was received and filed on August 17, 2015. The certified record was also filed on this date. The matter has been assigned the above referenced Supreme Court cause number.

Pursuant to RCW 2.60.030 and RAP 16.16(e), briefs are due in accordance with the following schedule:

1.    The Plaintiff's opening brief should be served and filed by not later than September 16, 2015;

Page 2
No. 92081-8
August 18, 2015

2.    The Defendant's answering brief should be served and filed within 20 days after service of the Plaintiff's opening brief; and

3.    The Plaintiff's reply brief should be served and filed within 10 days after service of the Defendant's answering brief.

Briefs should be in the form provided by RAP 10.3 and RAP 10.4, and should be served and filed in accordance with RAP 10.2(h).

Counsel are advised that future correspondence from this Court regarding this matter will most likely only be sent by an e-mail attachment, not by regular mail. This office uses the e-mail address that appears on the Washington State Bar Association lawyer directory. Counsel are responsible for maintaining a current business-related e-mail address in that directory. Any out-of-state counsel should advise this Court of their e-mail address and keep this office informed of any changes.

Sincerely,

Susan L. Carlson
Supreme Court Deputy Clerk

SLC:wg

cc:  Narda Pierce, Court Commissioner

# EXHIBIT D



FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUL 0 7 2016
CHIEF JUSTICE

This opinion was filed for record
at _____ on _____

Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| CERTIFICATION FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF WASHINGTON IN | ) ) ) ) ) | No. 92081-8 |
| LAURA ZAMORA JORDAN, as her separate estate, and on behalf of others similarly situated, | ) ) ) ) | En Banc |
| Plaintiff, | ) ) ) | Filed _____ JUL 0 7 2016 |
| v. | ) ) | |
| NATIONSTAR MORTGAGE, LLC, a Delaware limited liability company, | ) ) ) | |
| Defendant. | ) ) | |

OWENS, J. — After defaulting on her home mortgage payment, plaintiff

Laura Jordan returned home from work one evening to discover she could not enter

her own house: the locks had been changed without warning. A notice informed her

that in order to gain access to her home, she must call defendant Nationstar Mortgage

LLC to obtain the lockbox code and retrieve the new key inside. Although she

069

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

eventually reentered her home, she removed her belongings the next day and has not

returned since. Jordan's home loan was secured by a deed of trust, a commonly used

security instrument that was created as an alternative to traditional mortgages to

provide for a simpler method of foreclosure. The deed of trust contained provisions

that allowed Nationstar to enter her home upon default without providing any notice

to the homeowner. Today, we are asked to decide whether those provisions conflict

with Washington law.

　　Jordan represents a class action proceeding in federal court, which has certified

two questions to us. The first question asks whether the deed of trust provisions

conflict with a Washington law that prohibits a lender from taking possession of

property prior to foreclosure. We hold that it does because the provisions allow

Nationstar to take possession of the property after default, which conflicts with the

statute. The second question asks whether Washington's statutory receivership

scheme—providing for a third party to possess and manage property in lieu of either

the lender or homeowner—is the exclusive remedy by which a lender may gain access

to the property. As explained below, we hold nothing in our law establishes the

receivership statutes as an exclusive remedy.

FACTS

　　In 2007, Jordan bought a home in Wenatchee, Washington, with a home loan of

$172,000 from Homecomings Financial. She secured the loan by signing a deed of

2

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

trust. The original lender assigned the loan to the Federal National Mortgage

Association (Fannie Mae), one of the nation's largest mortgagees that primarily

participates in the secondary mortgage market, which hired Nationstar to service the

loan.

Jordan went into default on her mortgage payments in January 2011. In March

2011, one of Nationstar's vendors came to Jordan's home and changed the locks on

her front door. Jordan returned home to find a notice on the front door informing her

that the property was found to be "unsecure or vacant" and that to protect her and the

mortgagee's interest in the property, it was "secured against entry by unauthorized

persons to prevent possible damage." Order Certifying Questions to Wash. Supreme

Ct., *Jordan v. Nationstar Mortg., LLC*, No. 2:14-CV-0175-TOR at 6 (E.D. Wash.

Aug. 10, 2015). While the above-noted facts are undisputed, the parties dispute

whether the home was vacant. Jordan contends she was living there, left for work that

morning as usual, and returned to find the lockbox and notice. On the other hand,

Nationstar contends that its vendor performed an inspection of the property and

determined it was vacant.

Upon finding the notice when she returned home, Jordan called the phone

number provided and got the key from the lockbox to reenter her home. She took all

of her belongings and vacated the house the next day. Since then, Nationstar's vendor

has maintained the property's exterior and winterized the interior. Nationstar does not

3

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

claim to have attempted to provide Jordan any notice of its intention to inspect the property and rekey it. Nationstar contends that its usual practice is to change the locks on only one door, such that it can access the home in the future, but also so that the owner can still enter the home through another door. Here, Jordan's home had only a front door and a sliding glass door in the rear of the home. Therefore, when Nationstar's vendor rekeyed the front door, she had no means of entry.

Jordan represents a certified class of 3,600 Washington homeowners who were locked out of their homes pursuant to similar provisions in their deeds of trust with Nationstar. This case presents an important issue for these homeowners and the thousands of others subject to similar provisions, as well as the many mortgage companies that have a concern with preserving and protecting the properties in which they have an interest. Three amicus briefs were filed in this case: Federal Home Loan Mortgage Corporation (Freddie Mac) and the city of Spokane supporting defendant Nationstar, and the Northwest Consumer Law Center supporting plaintiff Jordan. Freddie Mac tells us that the provisions such as the ones at issue here are important to the foreclosure process because they allow lenders to enter the property to maintain and secure it. It contends that such provisions help meet Freddie Mac's requirements it imposes on companies like Nationstar to preserve properties.

In April 2012, Jordan filed a complaint against Nationstar in Chelan County Superior Court, alleging state law claims that include trespass, breach of contract, and

4

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

violations of the Washington Consumer Protection Act and the Fair Debt Collection
Practices Act. Ch. 19.86 RCW; 15 U.S.C. §§ 1692-1692p. Chelan County Superior
Court certified the class action, with Jordan as the representative for the 3,600
similarly situated homeowners. Nationstar removed the action to the United States
District Court for the Eastern District of Washington (District Court). The parties
each filed motions for partial summary judgment. Nationstar asked the District Court
to find the provisions at issue enforceable under Washington law. Jordan asked the
District Court to find that before the lender can enter a borrower's property, the lender
must obtain either the borrower's postdefault consent or permission from a court.
Furthermore, Jordan contends that receivership is the only remedy by which a lender
may gain access to the borrower's property. Finding that the case raised unresolved
questions of Washington state law, the District Court certified two questions to us.
We accepted the following certified questions.

CERTIFIED QUESTIONS

1.    Under Washington's lien theory of mortgages and RCW 7.28.230(1), can
a borrower and lender enter into a contractual agreement prior to default that allows the
lender to enter, maintain, and secure the encumbered property prior to foreclosure?

2.    Does chapter 7.60 RCW, Washington's statutory receivership scheme,
provide the exclusive remedy, absent postdefault consent by the borrower, for a lender
to gain access to an encumbered property prior to foreclosure?

5

073

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

## ANALYSIS

Certified questions present questions of law and we review them de novo. *See, e.g., Parents Involved in Cmty. Sch. v. Seattle Sch. Dist., No. 1*, 149 Wn.2d 660, 670, 72 P.3d 151 (2003).

1. *Washington's Lien Theory and RCW 7.28.230(1) Prevent a Borrower and a Lender from Contracting To Allow the Lender To Take Possession Based on Borrower Default*

The District Court asks us to determine whether a predefault clause in a deed of trust that allows a lender to enter, maintain, and secure the property before foreclosure is enforceable. We must determine whether these provisions contravene Washington law. As described below, the deed of trust provisions authorize a lender to enter the borrower's property after default. The parties agree that a Washington statute prohibits a lender from taking possession of a borrower's property prior to foreclosure. The controversial issue here is whether the deed of trust provisions allowing the lender to enter constitute taking possession prior to foreclosure, such that they conflict with state law. Based on Nationstar's practices, we find that the provisions do allow the lender to take possession and thus they are in conflict with state law. As such, we answer the first certified question in the negative.

a. *The Deed of Trust Provisions Allow a Lender To Enter the Borrower's Property upon Default or Abandonment*

"[I]t is the general rule that a contract which is contrary to the terms and policy of an express legislative enactment is illegal and unenforcible [sic]." *State v. Nw.*

6

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

*Magnesite Co.*, 28 Wn.2d 1, 26, 182 P.2d 643 (1947). While we recognize an overarching freedom to contract, provisions are unenforceable where they are prohibited by statute. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984).

The provisions at issue are made up of two sections in the deed of trust. The first provision, in pertinent part, is as follows:

> 9.    **Protection of Lender's Interest in the Property and Rights Under this Security Instrument**. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, . . . or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. . . . Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so.

Ex. 19, at 8. The provisions also allows the lender to "make reasonable entries upon and inspections of the Property" where the lender has reasonable cause and gives the borrower notice. *Id.* at 7. It also requires the borrower to maintain and protect the property. *Id.*

Together, these sections are the so-called "entry provisions" that are at issue in this case, which allow the lender to enter, maintain, and secure the property after the borrower's default or abandonment. Nationstar hinges its argument on the need to

7

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

secure abandoned property, stating it does not enter occupied property. However, the provision plainly states that the lender may "secure" the property after the borrower defaults *or* abandons the property. The provision specifically lists changing the locks as a method of securing the property. Thus, the provisions authorize the lender to enter and rekey the property solely upon default, regardless of whether the borrower has abandoned the property.

As explained below, it is well settled that Washington law prohibits lenders from taking possession of borrowers' property before foreclosure. This question turns on whether the above provisions authorize lenders to "take possession" and if, in fact, the lender's actions here constituted taking possession.

### b. *Washington's Lien Theory Does Not Permit a Lender To Take Possession of Property Prior to Foreclosure*

Our case law is clear that Washington law prohibits a lender from taking possession of property before foreclosure of the borrower's home. Importantly, the parties agree on this point; under state law, a secured lender cannot gain possession of the encumbered property before foreclosure.

RCW 7.28.230 provides that

(1)    A mortgage of any interest in real property shall not be deemed a conveyance so as to enable the owner of the mortgage to recover possession of the real property, without a foreclosure and sale according to law.[1]

---

[1] Before 1969, this section of the statute ended after "without a foreclosure and sale according to law." CODE OF 1881, § 546. It was amended in 1969 to make clear that the statute should not be

8

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

This statute essentially codified Washington's lien theory of mortgages. The mortgage lien theory prevails in Washington, meaning that the mortgage is seen as "nothing more than a lien upon the property to secure payment of the mortgage debt, and in no sense a conveyance entitling the mortgagee to possession or enjoyment of the property as owner." *W. Loan & Bldg. Co. v. Mifflin*, 162 Wash. 33, 39, 297 P. 743 (1931). We have interpreted RCW 7.28.230(1) to mean that a mortgagor's default does not disrupt the mortgagor's right to possession of real property, and that the mortgagor retains the right to possession until there has been foreclosure and sale of the property. *Howard v. Edgren*, 62 Wn.2d 884, 885, 385 P.2d 41 (1963).

The *Restatement (Third) of Property* takes the approach that mortgagee possession agreements conflict with lien theory statutes. *See* RESTATEMENT (THIRD) OF PROP.: MORTGAGES § 4.1 cmt. b (AM. LAW INST. 1997). Several lien theory jurisdictions hold that provisions that allow the lender to take possession of the property contravenes public policy that is inherent to the lien theory; indeed, some states have even codified statutes that specifically invalidate such agreements. *See, e.g.*, COLO. REV. STAT. ANN. § 38-35-117; IDAHO CODE ANN. § 6-104; NEV. REV. STAT. § 40.050; OKLA. STAT. ANN. tit. 42, § 10; UTAH CODE ANN. § 78B-6-1310.

---

interpreted to prohibit a mortgagee from collecting rents before foreclosure. *See* LAWS OF 1969, 1st Ex. Sess., ch. 122, § 1; *and see Kezner v. Landover Corp.*, 87 Wn. App. 458, 464, 942 P.2d 1003 (1997). However, the bedrock principle that borrowers have a right to possession prior to foreclosure was not altered by the amendment.

9

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

Washington's legislature, however, did not specifically invalidate such contrary agreements in its codification of lien theory prohibiting the lender from taking possession of property before foreclosure. That the legislature did not specifically invalidate such contract provisions, as did other states, does not mean the provisions do not conflict with our laws. Thus, we must determine whether its statute is in conflict with such an agreement.

Nationstar concedes that the borrower's right to possession cannot be overcome by a contrary provision in the mortgage or deed of trust because such a provision would be unenforceable as it would contravene Washington law. Def.'s Answering Br. at 11. However, Nationstar argues that the entry provisions do not authorize the lender to take "possession" and that its specific conduct at Jordan's residence did not constitute possession. Therefore, the determinative issue in answering this first certified question is whether the entry provisions cause the lender to gain "possession." As explained below, the entry provisions do authorize conduct that constitutes "possession."

### c. *These Entry Provisions Allow a Lender To Take Possession Prior to Foreclosure and Therefore Conflict with State Law*

We must determine if the entry provisions authorize the lender to take "possession" of the property. If they do, the provisions are in conflict with Washington law. Here, we look to the actions that Nationstar took pursuant to the entry provisions to see if they constituted "possession." Possession has slightly

10

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

different meanings in different areas of the law. The parties supplied definitions from real property law, tort law, and landlord-tenant law because it is unclear which definition is applicable to RCW 7.28.230(1).

Under any definition, the conduct allowed under the entry provisions constitutes possession because Nationstar's actions satisfy the key element of possession: control. In property law, "possession" is defined as "a physical relation to the land of a kind which gives a certain degree of physical control over the land, and an intent so to exercise such control as to exclude other members of society in general from any present occupation of the land." RESTATEMENT (FIRST) OF PROP.: DEFINITION OF CERTAIN GENERAL TERMS § 7(a) (AM. LAW INST. 1936).

The key element to the property definition of "possession" is the "certain degree of physical control." Tort law similarly requires control. In tort law, which is concerned primarily with liability, a "possessor of land" is defined as "a person who occupies the land and controls it." RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL AND EMOTIONAL HARM § 49 (AM. LAW INST. 2012).

The Court of Appeals applied the tort definition of possession when it considered the phrase "mortgagees in possession" for purposes of premises liability. *Coleman v. Hoffman*, 115 Wn. App. 853, 858-59, 64 P.3d 65 (2003). There, the lender used RCW 7.28.230(1) as a defense to its putative possession to avoid liability, arguing that it could not have been "in possession" because the statute forbids it. *Id.*

11

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

at 863.  The court relied on the above tort definition of "possession" and another

prominent source that stated for a lender to be liable, it must "'exercise dominion and

control over the property.'"  *Id.* at 859 (quoting 62 AM. JUR. 2D *Premises Liability*

§ 8, at 356 (1990)).  In finding that the plaintiff showed enough facts of lender's

possession, the court pointed to the lender's repairs and payments of utility bills.  *Id.*

at 862-63.

      We also find that landlord-tenant law's treatment of "possession" helpful—

particularly its analysis of the impact of changing locks.  In *Aldrich v. Olson*, the

Court of Appeals found that when the landlord changed the locks of her tenant's

home, it was an unlawful eviction.  12 Wn. App. 665, 672, 531 P.2d 825 (1975).  The

court reasoned, "It is difficult to visualize an act of a landlord more specifically

intended as a reassumption of possession by the landlord and a permanent deprivation

of the tenant's possession than a 'lockout' without the tenant's knowledge or

permission."  *Id.* at 667.

      From any approach, we find that Nationstar's conduct constituted possession.

The foregoing possession definitions, as well as *Coleman* and *Aldrich*, are instructive.

Nationstar's vendor's actions constituted possession because its actions are

representative of control.  The vendor drilled out Jordan's existing locks and replaced

the lock with its own.  Nationstar stated in its brief that it rekeyed Jordan's property to

allow itself access to return to secure the property by winterizing it and to make

12

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

repairs. Def.'s Answering Br. at 33-34. Perhaps that is true; however, rekeying the

property also had the effect of communicating to Jordan that Nationstar now

controlled the property. The action left Jordan with no method of entering her own

property. Nationstar relies on the fact that it did not change the locks to exclude

Jordan (because it provided her a lockbox and phone number to call) to provide proof

that it did not possess the premises. However, although she was able to obtain a key

by calling, the process made Nationstar the "middle man." She could no longer

access her home without going through Nationstar. This action of changing the locks

and allowing her a key only after contacting Nationstar for the lockbox code is a clear

expression of control. Although Nationstar did not exclude Jordan from the premises

(as she was able to gain a key and enter), she left the next day and did not return. In

its amicus brief, the Northwest Consumer Law Center advised us anecdotally that

many similarly situated Washington homeowners felt that when the lender changed

the locks to their homes, they no longer had a right to continue to possess the

property. *See* Br. of Amicus Curiae Nw. Consumer Law Ctr. at 6.

Nationstar effectively ousted Jordan by changing her locks, exercising its

control over the property. Although the mortgagee-mortgagor context is different

from the landlord-tenant context, *Aldrich* provides an apt analogy here because the

court there found that changing the tenant's locks was the most striking showing of a

reassumption of possession. 12 Wn. App. at 667. Changing the locks is akin to

13

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

exercising control, which is the key element of possession. By changing the locks,

Nationstar took possession of the property. Since these actions are authorized by the

entry provisions, the entry provisions allow the lender to take possession of the

property. Because Washington law prohibits lenders from taking possession of the

borrower's property before foreclosure, the provisions are in conflict with state law.

Therefore, we must answer the first certified question in the negative and find that the

entry provisions are unenforceable.

### 2. *Chapter 7.60 RCW Does Not Provide the Exclusive Remedy for a Lender To Gain Access to an Encumbered Property Prior to Foreclosure*

The second certified question asks whether this state's receivership statutes

separately prohibit the entry provisions. Specifically, this second question asks

whether chapter 7.60 RCW, which provides for the judicial appointment of a third

party receiver to manage the property, is the exclusive method by which lenders can

gain access to encumbered property prior to foreclosure.

This is an issue of first impression in this court, and no Washington appellate

decision is on point. We must answer this question in the negative because nothing

indicates that the statutory receivership scheme provides the exclusive remedy for

lenders to access a property.

### a. *Background on Receivership and Its Role in Mortgage Foreclosure*

Chapter 7.60 RCW governs Washington's receivership scheme. A "receiver"

is a third party appointed by a court to take charge of property and manage it as the

14

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

court directs. 18 WILLIAM B. STOEBUCK & JOHN W. WEAVER, WASHINGTON

PRACTICE: REAL ESTATE: TRANSACTIONS, § 18.6, at 310 (2d ed. 2004). The statutes

enumerate some 40 circumstances under which a receiver may be appointed. Only a

few concern mortgaged real property. *See* RCW 7.60.025(1)(b), (g), (cc), (dd).

Although authorized by statute, lenders are not *entitled* to a receiver, even where a

clause in the mortgage provides for the appointment of a receiver. STOEBUCK &

WEAVER, *supra*, § 18.6, at 312. While statutory grounds exist for a court-appointed

receiver prior to foreclosure, it is rarely sought. *Id.* at 314.

In the context of mortgaged real property, a receiver might be appointed as a

"custodial receiver," who would take possession of the property and preserve it.

RCW 7.60.015; 7.60.025(1)(g). Commonly, receivers are appointed to collect rent

from income-producing property. STOEBUCK & WEAVER, *supra*, § 18.6, at 310-11;

*see* RCW 7.28.230(1) (providing grounds for appointing a receiver to collect rent for

application to mortgage). Importantly, nothing in the text of RCW 7.28.230(1) or

chapter 7.60 RCW requires the appointment of a receiver in this context.

Jordan argues that the entry provisions are Nationstar's attempt to contract

around chapter 7.60 RCW's requirements and that the legislature intended for the

statutes to provide lenders an exclusive remedy. However, as explained below,

Jordan's arguments fail to establish that chapter 7.60 RCW does so.

15

083

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

> b.   *The Contract Provisions Do Not Conflict with Chapter 7.60 RCW*

We have held that the deed of trust act in chapter 61.24 RCW cannot be contracted around in two recent cases where parties attempted to modify the deed of trust act's requirements by private contract. *See Bain v. Metro. Mortg. Grp., Inc.*, 175 Wn.2d 83, 107, 285 P.3d 34 (2012) (holding that parties cannot contract to fit a statutory definition to fulfill the act's requirements); *Schroeder v. Excelsior Mgmt. Grp., LLC*, 177 Wn.2d 94, 107, 297 P.3d 677 (2013) (holding that parties cannot contractually waive a requirement under the act that agricultural properties may only be foreclosed judicially).

Jordan argues that like in *Bain* and *Schroeder*, the entry provisions attempt to "bypass" statutes that dictate a lender's only entry method. Pl.'s Opening Br. at 25. However, Jordan misconstrues the receivership statutes as providing a "list of requisites to a lender gaining access to a borrower's property." *Id.* at 28. While the statutes enumerate receivership requirements, they are not concerned with a lender's access to borrower's property but rather merely set forth requirements *should* a receiver be necessary. Thus, the entry provisions do not attempt to circumvent the receivership statutes and thus do not conflict with chapter 7.60 RCW. Similarly, Jordan's other arguments do not support her contention that the receivership statutes provide lenders an exclusive remedy to access property. In fact, as explained below,

16

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

the text of the statute and policy considerations support a finding that chapter 7.60
RCW does not provide lenders the exclusive remedy.

    c. *The Statute's Text Supports Finding That It Does Not Provide an
        Exclusive Remedy*

    The text of the statute supports a finding that it does not provide the exclusive
remedy. First, the plain language of the statute must be examined to determine
exclusivity. We have held that when engaging in statutory interpretation, our
"fundamental objective is to ascertain and carry out the Legislature's intent, and if the
statute's meaning is plain on its face, then the court must give effect to that plain
meaning as an expression of legislative intent." *Dep't of Ecology v. Campbell &
Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

    Of course, an exclusivity clause would be the clearest indication of the
legislature's intent that the statute be exclusive, but as Jordan concedes, this statute
does not have one. However, Jordan argues that because the statutory scheme is
"comprehensive," the legislature intended for the statute to provide the exclusive
remedy for lenders such that they cannot contract for entry otherwise. *See generally*
Pl. Opening Br. at 24-37; *and see* LAWS OF 2004, ch. 165, § 1. It is true that the
receivership statutory scheme is comprehensive, but the plain language of the statute
does not suggest that chapter 7.60 RCW was intended to be an exclusive remedy.

    If a court were to appoint a receiver in this context, it would likely be pursuant
to RCW 7.60.025(1). Thus, we analyze the question of whether the receivership

17

085

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

provides lenders the exclusive remedy under that portion of the provision. The statute

provides, in part:

> A receiver *may* be appointed by the superior court of this state in the following
> instances, but except in any case . . . in which a receiver's appointment with
> respect to real property is sought under (b)(ii) of this subsection, a receiver
> *shall* be appointed *only if* the court additionally determines that the
> appointment of a receiver is reasonably necessary and that *other available*
> *remedies* either are not available or are inadequate.

RCW 7.60.025(1) (emphasis added). Subsection (b)(ii) provides that a receiver *may*

be appointed after the commencement of a foreclosure proceeding on a lien against

real property where the appointment is provided for by agreement or is necessary to

collect rent or profits from the property.

In analyzing this text, we look to its plain language. In general, the court's

discretion is illustrated by the word "may." Under subsection (b)(ii), a receiver *shall*

be appointed, but *only if* the court makes additional findings. First the court must find

a receiver is "reasonably necessary." RCW 7.60.025(1)(b)(ii). Second, and more

importantly, the court determines that "*other available remedies* either are not

available or are inadequate." RCW 7.60.025(1) (emphasis added).

Courts consider all of the facts and circumstances to determine whether to

appoint a receiver. *Union Boom Co. v. Samish Boom Co.*, 33 Wash. 144, 152, 74 P.

53 (1903). "It is well established that a receiver should not be appointed if there is

any other adequate remedy." *King County Dep't of Cmty. & Human Servs. v. Nw.*

*Defs. Ass'n*, 118 Wn. App. 117, 126, 75 P.3d 583 (2003) (citing *Bergman Clay Mfg.*

18

086

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

*Co. v. Bergman,* 73 Wash. 144, 147, 131 P. 485 (1913)). The Court of Appeals reasoned that allowing a current board of directors to oversee a corporation "was not an adequate remedy" and, thus, found that appointment of a receiver was appropriate. *Id.* at 126.

Thus, in general, other remedies exist outside of appointing a receiver. It is not before us to determine what particular remedies are available. To answer this question, it is sufficient that the plain language of the provision does not indicate that chapter 7.60 RCW was meant to provide an exclusive remedy to lenders. Finally, public policy also supports the finding that the statute is not the exclusive remedy, which we discuss below.

### d. Public Policy Supports Finding That Chapter 7.60 RCW Does Not Provide an Exclusive Remedy

To the extent that chapter 7.60 RCW's language is not explicit, it is worth noting a relevant policy consideration. One of the advantages of a deed of trust is that it offers "'efficient and inexpensive'" nonjudicial foreclosure. *Schroeder,* 177 Wn.2d at 104 (quoting *Cox v. Helenius,* 103 Wn.2d 383, 387, 693 P.2d 683 (1985)). Thus, requiring lenders to wade through the judicial receivership process in all cases—regardless of the facts and circumstances—is illogical. Overall, both policy and the plain text of the statute support finding that it does not provide an exclusive remedy to lenders. Thus, we must answer this question in the negative.

19

087

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

## CONCLUSION

We answer the first certified question in the negative. Washington law prohibits lenders from taking possession of property prior to foreclosure. These entry provisions enable the lender to take possession after default, and the lender's action here constitutes taking possession. Therefore, the entry provisions are in direct conflict with state law and are unenforceable.

As to the second question, we also answer it in the negative. The text of the receivership statutes, the legislative intent behind them, and public policy considerations compel us to find that chapter 7.60 RCW is not the exclusive remedy for lenders to gain access to a borrower's property.

088

*Jordan v. Nationstar Mortgage, LLC*
No. 92081-8

WE CONCUR:

089

*Jordan v. Nationstar Mortgage, LLC*

No. 92081-8

STEPHENS, J. (dissenting)—I respectfully dissent because the majority erroneously equates the entry provisions at issue with actual possession. Months after Laura Jordan defaulted on her loan, Nationstar Mortgage LLC inspected Jordan's property and determined that it was vacant. Pursuant to the deed of trust's entry provisions, Nationstar secured the home by changing the lock to the front door and posted instructions on how Jordan could enter the home if she returned. This practice is not inconsistent with Washington's lien theory of mortgages and RCW 7.28.230(1). Accordingly, the first certified question should be answered in the affirmative.

"Washington courts have hesitated to 'invoke public policy to limit or avoid express contract terms absent legislative action.'" *Brown v. Snohomish County Physicians Corp.*, 120 Wn.2d 747, 753, 845 P.2d 334 (1993) (quoting *State Farm*

*Jordan v. Nationstar Mortgage, LLC*, 92081-8 (Stephens, J. Dissenting)

*Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984)). It is undisputed that the deed of trust's entry provisions were contractually agreed to and authorized Nationstar to change the locks on Jordan's home after default. And as the majority correctly notes, Washington's legislature has not "specifically invalidate[d] such contrary agreements in its codification of lien theory prohibiting the lender from taking possession of property before foreclosure." Majority at 10.

The majority nevertheless finds the entry provisions contravene Washington's rule against lenders taking preforeclosure possession of borrowers' property. The majority does so by describing the entry provisions as authorizing the lender to take "possession." *Id.* at 8, 12. But the certified question asks not whether lenders can take "possession" of property before foreclosure. Instead, it asks whether the lender can "enter, maintain, and secure the encumbered property" before foreclosure. Order Certifying Questions to Wash. Supreme Court, *Jordan v. Nationstar Mortg., LLC*, No. 2:14-CV-0175-TOR at 9 (E. Wash. Aug. 10, 2015). Absent legislation stating otherwise, the entry provisions at issue are not inconsistent with Washington's lien theory of mortgages and RCW 7.28.230(1).

The majority cites inapposite authority to equate the entry provisions with actual possession. At the outset, the majority's reliance on the *Restatement* is misplaced. RESTATEMENT (THIRD) OF PROP: MORTGAGES § 4.1 (AM. LAW. INST.

*Jordan v. Nationstar Mortgage, LLC*, 92081-8 (Stephens, J. Dissenting)

1997). The *Restatement* does not contemplate entry provisions, like those considered here, but rather a lender taking possession. The *Restatement* merely reiterates the general rule against accelerated preforeclosure possession of property. In illustrative applications of this rule, the *Restatement* examines instances where the mortgagee has "file[d] an action to obtain possession of [the property]." RESTATEMENT § 4.1 cmt. b, illus. 1-3. Here, however, Nationstar has not filed an action to obtain possession of Jordan's property. Instead, after Jordan defaulted on her loan, Nationstar took contractually authorized steps to secure the abandoned property—and it posted instructions on how Jordan could access the property, consistent with her continued right of possession.

Neither of the two Court of Appeals decisions cited by the majority support equating the entry provisions to possession. *Aldrich v. Olson* does not even interpret "possession" in RCW 7.28.230(1). 12 Wn. App. 665, 531 P.2d 825 (1975). And *Coleman v. Hoffman* merely clarifies the difference between the right to possession (applicable to foreclosure actions) and actual possession (applicable to premises liability matters): "Although RCW 7.28.230 effectively precludes a mortgagee from obtaining possession of property to the mortgagor's exclusion, the statute does not bear on the question of whether a mortgagee actually possess the property. Actual possession, not a right to possession, is the critical inquiry in premises liability

-3-

*Jordan v. Nationstar Mortgage, LLC*, 92081-8 (Stephens, J. Dissenting)

cases." 115 Wn. App. 853, 863-64, 64 P.2d 65 (2003). But unlike the landlords in *Aldrich* and *Coleman*, Nationstar never possessed the property to Jordan's exclusion. Rather, Nationstar provided Jordan with instructions on how to enter her home if she returned. At no point did Nationstar ever object to Jordan's continued right to possession before foreclosure.

Finally, even if we regarded the entry provisions as interfering with Jordan's right to possession, Nationstar was nevertheless justified in securing Jordan's abandoned property. The *Restatement* recognizes three exceptions to the general rule that mortgagees cannot obtain possession of the mortgagor's property before foreclosure: (1) mortgagor consent, (2) mortgagee's possession as the result of peaceful entry in good faith after purchasing the property at a void or voidable foreclosure sale, and (3) mortgagor abandonment. RESTATEMENT § 4.1 cmt. c. Here, the evidence supported Nationstar securing Jordan's home under the mortgagor abandonment exception. Months after Jordan defaulted on her loan, Nationstar inspected Jordan's property and determined that it was vacant. Nationstar then changed the locks, which it was allowed to do under the entry provisions in order to secure the property. *Cf. PNC Bank, NA v. Van Hoornaar*, 44 F. Supp. 3d 846, 856-57 (E.D. Wis. 2014) (dismissing trespass claim against lender for changing a homeowner's locks upon default because the mortgage agreement authorizing the

4

*Jordan v. Nationstar Mortgage, LLC*, 92081-8 (Stephens, J. Dissenting)

lender to secure the premises upon default or abandonment created an implied consent to entry); *see also Tennant v. Chase Home Fin., LLC*, 187 So. 3d 1172, 1181-82 (Ala. Civ. App. 2015). Moreover, public policy considerations support Nationstar securing Jordan's abandoned property: "Not only is it important to protect the [property] against the elements and vandalism, but society is benefited by [the property's] productive use." RESTATEMENT § 4.1 cmt. c.

Pursuant to entry agreements like the one mutually agreed on by Nationstar and Jordan, a lender may "enter, maintain, and secure" seemingly abandoned property before foreclosure without taking "possession" of it. Because the first certified question should be answered in the affirmative, I dissent.

*Jordan v. Nationstar Mortgage, LLC*, 92081-8 (Stephens, J. Dissenting)

REQUEST FOR **SERVICE**



TRACKING NUMBER
**14661052**

SERVE:

**WELLS FARGO BANK, NATIONAL ASSOCIATION c/o CORPORATION SERVICE COMPANY**

AT ADDRESS:

**300 DESCHUTES WAY SW SUITE 304 TUMWATER, WA 98501**

ALL ENCLOSED DOCUMENTS:

**SUMMONS; COMPLAINT FOR CLASS ACTION AND DAMAGES**

REQUIREMENTS FOR VALID SERVICE:

**Location**
A latitude/longitude measurement is required.
Latitude/longitude reported must match expected location.
**Manner Of Service**
. Do not post.
Identity must be confirmed if served personal/substitute.
**Photo**
At least one photograph must be taken of the address with every attempt, including house number. Please also capture any vehicle tags or important features that could help confirm service.
**Timing**
Report event within 15 minutes.

PARTNER
**Scott Gogan**
▓▓▓▓▓▓▓▓▓ YELM, WA 98597
CUSTOMER
**Jeffers, Danielson - Wenatchee**
CUSTOMER REF
**2016-0395-0001C**
COURT
**WA Superior of Stevens Co**
CASE NUMBER

CASE TITLE
**VALERIE RHODES, A SINGLE WOMAN, AND ON BEHALF OF OTHERS S... vs. WELLS FARGO BANK, NATIONAL ASSOCIATION, A NATIONAL BANKIN...**

SIGNATURE OF RECIPIENT:

**X** _____

By signing my name, I merely acknowledge that I am in physical receipt of the documents referenced above and my signature shall NOT be deemed an admission of any of the accusations contained in the enclosed documents, or an acceptance of liability for any debt that may be referenced in the documents served upon me.



www.abclegal.com

Contact your ABC representative at:
**206-521-2980**



Generated:    12/15/2016

096